**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Loretta Mae PARK,**
**Defendant-Appellant.**

**No. 75–1761.**

United States Court of Appeals,
Ninth Circuit.

Sept. 15, 1975.

Dianne Robinson, Deputy Federal Defender (argued), Los Angeles, Cal., for defendant-appellant.

Ronald Muntean, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

OPINION

Before BARNES and ELY, Circuit Judges, and SOLOMON,* District Judge.

* The Honorable Gus J. Solomon, Senior Judge, District of Oregon, sitting by designation.

PER CURIAM:

Appellant was convicted on February 24, 1975, of attempting to introduce 30 valium tablets concealed in a vaseline coated balloon (*i. e.,* one suitably prepared for body cavity concealment) onto the grounds of the Terminal Island Federal Correctional Institution in violation of 18 U.S.C. § 1791.

Appellant on this appeal alleges six grounds for reversal: (1) that the trial court violated Rule 32 of the Federal Rules of Criminal Procedure, by reading appellant's pre-sentencing report prior to determining defendant's guilt; (2) that 18 U.S.C. § 1791 on its face is unconstitutionally vague and overbroad; (3) that § 1791 is unconstitutional as applied to appellant; (4) that the trial court prejudiced appellant's rights by allowing the government to reopen its case twice, and allegedly applying the wrong standard of proof; (5) that the government's proof was at variance with the indictment; and (6) that there was insufficient evidence to support appellant's conviction.

I

We find appellant's first argument to be well taken. Rule 32 states:

"(c) Presentence Investigation

(1) When made. The probation service of the court shall make a pre-sentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. *The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.*" (Emphasis added.)

The United States Supreme Court interpreting Rule 32 in *Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), stated:

"Rule 32 is explicit. It asserts that the 'report shall not be submitted to the court . . . unless the defendant has pleaded guilty or has been found guilty.' This language clearly permits the preparation of a presen-tence report before guilty plea or conviction but it is equally clear that the report must not, under any circumstances, be 'submitted to the court' before the defendant pleads guilty or is convicted. Submission of the report to the court before that point constitutes error of the clearest kind.

"Moreover, the rule must not be taken lightly. Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. To permit the *ex parte* introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice from premature submission of the presentence report. No trial judge, therefore, should examine the report while the jury is deliberating since he may be called upon to give further instructions or answer inquiries from the jury, in which event there would be the possibility of prejudice which Rule 32 intended to avoid. Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular character and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so." (Id. at 491–92, 89 S.Ct. at 1136). (Footnotes omitted.)

Unlike in *Gregg* where the Supreme Court ultimately decided that the record was insufficient to show a violation of Rule 32 (the Supreme Court posited that the judge had read the short, well organized report in the few moments that elapsed between the jury verdict and sentencing), the record in the instant case clearly indicates that the trial judge had read the presentence report before he announced his verdict. On Monday,

February 24, 1975, the day the court found appellant guilty, a colloquy took place between court and counsel, in which the court stated the presentence report had been read by him previously ("I think Thursday or Friday"), which would have been February 20th or 21st, 1975 (R.T. 226–228).

■ This violation of Rule 32, in light of the Supreme Court's strong language in *Gregg,* mandates reversal.[1]

II

Since we reverse on the grounds of the Rule 32 violation we do not reach all of appellant's other issues. However, it is necessary for us to reach the issue as to the constitutionality of § 1791 in order to provide proper guidance to the District Court on remand.

Appellant claims that 18 U.S.C. § 1791 is on its face unconstitutionally vague and overbroad. That statute reads:

"§ 1791. Traffic in contraband articles.

*Whoever, contrary to any rule or regulation promulgated by the Attorney General,* introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom anything whatsoever, shall be imprisoned not more than ten years. June 25, 1948, c. 645, 62 Stat. 786." (Emphasis added.)

The enabling regulation 28 C.F.R. § 6.1, promulgated thereunder reads:

"PART 6—TRAFFIC IN CONTRABAND ARTICLES IN FEDERAL PENAL AND CORRECTIONAL INSTITUTIONS

"6.1 Consent of warden or superintendent required.

"The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the warden or superintendent of such Federal penal or correctional institution is prohibited. (Pub.Law 772, 80th Cong.; 18 U.S.C. 1791) [13 F.R. 5660, Sept. 30, 1948]"

Appellant takes particular umbrage to the fact that this statute *could* cover artificial limbs, pens, partial dental plates, etc. Appellant submits that the only way one could comply with the language of the act is to enter the grounds of the correctional institution stark naked, or submit to a skin search before entering the grounds.

■ Appellant misconstrues the statute. The statute is essentially nothing more than a broad delegation of powers to the Attorney General (and via 28 CFR § 6.1, a further delegation from the Attorney General to his subordinates[2]) to make rules covering what may or may not be brought onto a prison ground. *See Carter v. United States,* 333 F.2d 354, 355–56 (10th Cir. 1964); *United States v. Berrigan,* 482 F.2d 171, 182–84 (3rd Cir. 1973). Under a plain reading of the language of the statute, until a rule is made prohibiting the bringing in or removal of certain items from prison grounds, the statute's prohibitions do not come into play. The legislative history of § 1791 bears out this interpretation.[3]

Thus construed, we do not find this delegatory statute to be on its face ei-

1. Appellee's protestations of harmless error are of no avail. Because of the Supreme Court's strong language in *Gregg,* we hold that violations of Rule 32 are *per se* reversible. For that reason, we do not reach that issue of harmless error in this case. (*Cf., United States v. Small,* 472 F.2d 818, 820–21 (3rd Cir. 1972)).

2. Other courts have held this further delegation not improper. See *United States v. Berrigan, supra* at 182 n. 15.

3. Before the revision of this section in 1948 the statute listed various banned items: "narcotics" "drugs" "weapons" and "contraband." This enumeration was omitted in the revision "since the insertion of the words 'contrary to any rule or regulation promulgated by the attorney general' preserves the intent of the original statutes." (18 U.S.C. § 1791 Historical and Revision Notes.)

ther unconstitutionally overbroad or vague. *See United States v. Berrigan*, 482 F.2d 171, 182–84 (3rd Cir. 1973).

We turn now to a discussion of the rules promulgated pursuant to the authority granted in § 1791 and 28 CFR § 6.1 to determine whether the statute has been unconstitutionally implemented.

Before a person is admitted to visit an inmate at a federal correctional institution, certain procedures must be complied with. First, one must be approved as a visitor. When a visitor has been placed on the approved list, along with the notification of approval, the warden sends the visitor a printed letter of regulations pertaining to prison visits (see C.T. 23–24, 31). Second, each and every time a visitor arrives at the prison, he is required to fill out and sign a visitor's form (C.T. 22). The visitor's form at the Terminal Island facility states in relevant part:

### "NOTICE

TITLE 18, U.S.C., Chapter 87, Paragraph 1791—CONTRABAND, WHOEVER CONTRARY TO ANY RULE OR REGULATION PROMULGATED BY THE ATTORNEY GENERAL, INTRODUCES OR ATTEMPTS TO INTRODUCE INTO OR UPON THE GROUNDS OF ANY FEDERAL PENAL OR CORRECTIONAL INSTITUTION OR TAKES OR ATTEMPTS TO TAKE OR SEND THEREFORE *ANYTHING WHATSOEVER*, SHALL BE IMPRISONED NOT MORE THAN TEN YEARS.

"ANY PERSON WHO INTRODUCES (BRINGS) ALCOHOLIC BEVERAGES, NARCOTICS, *DRUGS*, FIREARMS, OR WEAPONS INTO THE VISITING ROOM OF THIS INSTITUTION, OR ON THE GROUNDS OF THIS INSTITUTION IS SUBJECT TO FEDERAL PROSECUTION UNDER TITLE 18, U.S.C. CHAPTER 87, PARAGRAPH 1791."

Appellant had regularly visited Stuart Fisher, an inmate of the prison, since April of 1972 when she received notification of her approval as a visitor. Appellant testified that it was her custom to visit the prison twice a week; that she signed the inmate's visitor's forms prior to each visit; that she approached the counter of the visitors' booth where the rules were prominently posted prior to each visit. Correctional Supervisor, Thomas Walker, testified that visiting instructions are mailed to each approved visitor; and that a statement of the prison regulations is in plain view at the counter of the visitors' booth. This means that appellant received a copy of the visiting instructions upon approval in April of 1972; that from the time of her approval to the day she was arrested she signed over 228 inmate visitor's forms specifically setting out drugs as prohibited to bring into the prison; and that over 228 times she approached the counter of the visitors' booth with the prison regulation in plain view setting out that medications are forbidden to be brought into the prison.

■ We think that the rule banning the introduction of drugs into the visiting room, as evidenced in the "visitor's form," was specific enough to give defendant notice of what conduct was required of her and what acts were prohibited. (*See Berrigan, supra* at 183).

■ Appellant further protests that § 1791 is unconstitutional *as applied to the appellant* because it allegedly: (1) could reach innocuous acts (e. g., prescribed drugs of the visitor carried in her purse); (2) depends for its meaning on cross references to interrelated acts and regulations; and (3) vests too broad a discretion in the enforcing officers.

We do not find the facts of the case create a vehicle by which appellant may raise any of these contentions. As to appellant's first point, it seems most doubtful that one would be likely to carry their prescriptions about in a well lubricated balloon. But, even leaving aside the nature of the container used, in view of the fact that the rule is explicit in banning the introduction of all drugs into the prison, it is difficult to view any

introduction of drugs into a prison, however unwitting, as being an innocuous act. Would appellant expect us to adopt a similar line of reasoning as to firearms? While a visitor may outside the prison grounds be legally entitled to carry a gun or use medication, the government has a great and legitimate interest in seeing that these items are not brought, even carelessly, onto prison facilities. Appellant's act was far from innocuous.

· As concerning appellant's second point, there can be no question of confusion caused by complex inter-references to the rules and regulations in this case. The notice the appellant signed some 228 times was clear and explicit on its face in prohibiting "drugs." (*See Berrigan, supra* at 183). In view of this fact, appellant had no need to sift through interlocking and confusing enactments in order to determine what conduct was required of her.

Appellant's third point (her contention that the rules allow an impermissibly broad discretion in the enforcing officer) also rings hollow. On its face, the rule allows *no* discretion. All introductions of drugs onto the prison grounds are unlawful. Appellant's citation of instances in which the prison room guards would send persons carrying articles considered harmless (*e. g.,* food, games, cigarettes) back to their cars to deposit them rather than arresting them involves another portion of the rules, and is otherwise not convincing. Thirty valium tablets in a vaseline coated balloon (admittedly prepared for rectal insertion and concealment (R.T. 197–98)) is a far cry from a cupcake or a couple of aspirin and vitamins in a pill box. It takes but common knowledge, and but little of that, to be able to grasp the difference in intent associated with the former as compared to the latter act. Such is the purpose of allowing prosecutors discretion. If there be any discretion granted, we do not find the discretion vested in the arresting officer to be excessive.

Appellant's challenges to the constitutionality of § 1791 on its face and as applied to her are without merit.

We issue a caveat that we here discuss the facts, rules and regulations of this case alone; and prescribe no absolute rules of law applicable to all cases and all facts.

We further find no merit in appellant's fourth, fifth and sixth grounds upon which reversal is urged.

Reversed and remanded for a new trial.