**Bernard Anthony YBARRA, Plaintiff,**

v.

**NEVADA BOARD OF STATE PRISON COMMISSIONERS, et al., Defendants.**

No. CIV–R–80–40–ECR.

United States District Court, D. Nevada.

Aug. 24, 1981.

Bernard Anthony Ybarra, in pro. per.

Ernest Adler and Richard E. Thornley, Deputy Attys. Gen., Carson City, Nev., for defendants.

Anita Louise Clark, in pro. per.

## ORDER

EDWARD C. REED, Jr., District Judge.

After an extensive hearing, this Court stated in an Order filed March 12, 1981, that the plaintiff was entitled to a preliminary injunction forbidding officials of the Nevada State Prison from enforcing its informal regulation, requiring frisk searches of contact visitors, against the plaintiff's girlfriend. The reasons were that the regulation (1) had not been put into writing and posted at the Prison, (2) was in conflict with a duly adopted existing regulation, and (3) had not been approved by the Board of State Prison Commissioners. Nevertheless, the Court did not issue an injunction. Instead, it gave the defendants sixty days to file proof, via affidavit of the Prison Super-intendent, that a regulation approved by the Board had been posted at the Prison. The Order provided that the plaintiff should have thirty days after the filing of such proof in which to dispute facts set forth in the Superintendent's affidavit.

On April 17, 1981, an appropriate affidavit was filed by the Director of the Nevada Department of Prisons. It declared that new prison procedure regulations covering "Visiting Procedure" (no. 328) and "Search of Outside Persons" (no. 214) had been promulgated by the Director and, on April 10, 1981, had been duly approved by the Board. Further, the new regulations had been posted in the Prison. Copies were attached to the Director's affidavit.

Department of Prisons Procedure (Regulation) no. 328 applies to searches of inmate visitors. It states, in pertinent part:

"*SEARCH OF VISITORS*

All visitors shall submit to a clothed body search if requested to do so. A 'Consent to Search' form (DOP–C–102) must be signed. Any visitor who refuses to submit to a clothed body search shall not be allowed to visit. The clothed body search will be conducted by an appropriate person of the same sex using standard procedures. The visitor may be required to remove shoes, jackets, etc., but no intimate apparel. All visitors may be fingerprinted.

The Superintendent of each institution may implement the clothed body search policy or a less restrictive policy by written post orders approved by the Director, displayed in a prominent place where all concerned may see them."

On May 6, 1981, the plaintiff filed his counter-affidavit, contending that the new procedures still violated State law and were unconstitutional. The delegation of authority to the superintendents to adopt any policy without Board approval is attacked as impermissible.

A notice posted at the Maximum Security Prison, where the plaintiff is incarcerated, states that a visitor who uses a restroom will be pat-searched afterwards. The plaintiff argues that, now, a visitor may be

subjected to multiple searches, which is worse than the original single search procedure the Court was prepared to enjoin.

Also, the plaintiff alleges that testimony at the evidentiary hearing proved that the bulk of the contraband introduced into prisons gets there via staff members, not visitors. Therefore, search procedures aimed at visitors, and not at staff members, are viewed by the plaintiff as being motivated by the desire to harass the visitors, thereby having a chilling effect on inmate visitation.

Whether the adoption of the new regulations by the Board was in compliance with the State Open Meeting Law is questioned by the plaintiff, based upon information "from a reliable source." He also complains that the Court's Order of March 12, 1981, failed to pass upon his constitutional challenge to warrantless searches of visitors and the voluntariness of their consent to search.

■ It can be seen that the material facts asserted in the Director's affidavit, namely, that new regulations were promulgated, that the Board approved them, and that copies were posted in the correctional institutions, are not disputed by the plaintiff's counter-affidavit. A further evidentiary hearing, therefore, is not needed. If the State Open Meeting Law was violated, the remedy must be sought in the appropriate Nevada court. See NRS 241.040.

As to the plaintiff's argument that new Procedure no. 328 constitutes an impermissible delegation of authority to prison superintendents, it should be noted that similar delegation pursuant to federal law has withstood constitutional attack. 18 U.S.C. § 1791 authorizes the U.S. Attorney General to promulgate rules or regulations controlling the introduction of contraband into federal penal institutions. The Attorney General, in turn, has delegated his power of implementation to the individual prison wardens. 28 C.F.R. § 6.1. This regulation has been approved as a reasonable way to enable the wardens to learn of and control what is coming into their institutions; there is too much variation in circumstances

and conditions among the prisons to require the Attorney General personally to exercise the discretion required to control in a reasonable manner the entry of contraband. *United States v. Berrigan*, 482 F.2d 171 (3rd Cir. 1973); *United States v. Ruckman*, 169 F.Supp. 160 (S.D.W.Va.1959). *See also United States v. Park*, 521 F.2d 1381 (9th Cir. 1975).

■ By analogy, delegation to Nevada prison superintendents of authority to impose reasonable conditions upon contact visitation would be constitutionally permissible. However, NRS 209.423 specifies that "Superintendents may authorize visits and correspondence between offenders and appropriate friends, relatives, and others under regulations adopted by the director and approved by the board." Therefore, the statute is more restrictive of the superintendent's authority than is the Constitution. Any regulation of visitation must be adopted by the Director of the Nevada Department of Prisons and approved by the Board.

Procedure no. 328 was adopted by the Director and approved by the Board. Thus, the first paragraph of the "Search of Visitors" portion, quoted above, passes procedural muster. It provides specific standards as to the kind of search (clothed body), need to sign a written consent to search (yes), who must conduct the search (person of same sex) and what clothing the visitor may be required to remove (shoes and jackets, but not intimate apparel).

■ Any attack based upon impermissible delegation, then, must be directed toward the second paragraph, which allows the superintendent of each institution to implement the clothed body policy set forth in the first paragraph, or "a less restrictive policy". The intent is clear. The superintendent of an institution is in a better position to know whether the specified procedure is more stringent than required by the conditions extant in his facility. Any search of a visitor has the potential for inconvenience and embarrassment. If the clothed body search policy is more exacting than needed to maintain the institution's

internal security, a less thorough policy may be opted for by the superintendent. Such an election could only lessen aggravation of the visitor. In determining the constitutionality of a delegation of authority, the purpose of the legislation is relevant where the legislative policy is to be applied by administrative officers to variable conditions. *Lichter v. United States*, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). Since a superintendent may not elect to adopt a more restrictive policy, the delegation is lawful.

The plaintiff's contention that pat-down searches are impermissible, in the absence of probable cause to believe the visitor is carrying contraband, is unavailing. In *Black v. Amico*, 387 F.Supp. 88 (W.D.N.Y. 1974), a regular visitor to jail inmates had been subjected to merely pat-down searches until he was arrested for possession of marijuana. No contraband had ever been found on his person at the prison, nor in the possession of the inmates he had visited. In other words, there was no "real suspicion" that he was bringing in contraband. Nevertheless, the jail officials, after his arrest and release on bail, would not let him visit prisoners unless he agreed to submit to a strip search. The Court enjoined such strip searches in the absence of a real suspicion that the visitor was carrying contraband. Nevertheless, even in the absence of such real suspicion, the Court held, at page 92:

> "Defendants may continue to require a pat-down search, removal of outer clothing, the emptying of pockets, screening by a metal detection device or other device which does not require disrobing, and the inspection of papers, bags, books or other items carried into the [jail]."

The leading case of *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) points out that challenges to prison restrictions must be analyzed in terms of the legitimate goals of the corrections system, the central one of which is the institutional consideration of internal security within the correction facility itself. The argument of the plaintiff that the bulk of the contraband entering his prison comes in via staff members, therefore, doesn't invalidate reasonable means employed by prison officials to protect against even a remote possibility that some contraband may reach the institution as a result of contact visits. *See Valentine v. Englehardt*, 492 F.Supp. 1039 (D.N.J.1980); *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). So long as those officials act in a reasonable manner and do not discriminate, federal court intervention is inappropriate. *Pell v. Procunier, supra; Feazell v. Augusta County Jail*, 401 F.Supp. 405 (W.D.Va.1975); *Valentine v. Englehardt, supra.* This requirement of reasonableness does not limit the procedure employed to the least restrictive means of protecting the internal security of the institution. *Bell v. Wolfish, supra; White v. Keller*, 438 F.Supp. 110 (D.Md.1977), aff'd 588 F.2d 913 (4th Cir. 1978).

The issue of the voluntariness of the consent to search executed by a visitor need not be discussed here. It is questionable whether a prisoner has a constitutional right to receive visitors. *White v. Keller, supra; Craig v. Hocker*, 405 F.Supp. 656 (D.Nev.1975). This is especially true when the visitor is not a close relative but, rather, a girlfriend. *Hamilton v. Saxbe*, 428 F.Supp. 1101 (N.D.Ga.1976), *aff'd* 551 F.2d 1056 (5th Cir. 1977).

In light of the foregoing, IT IS HEREBY ORDERED that the application of the plaintiff for a preliminary injunction be, and the same hereby is, DENIED.