No. 86,622

STATE OF KANSAS, *Appellee*, v. AUDRA CORINNA WATSON, *Appellant*.

(44 P.3d 357)

Opinion filed April 19, 2002.

*Michael S. Holland II*, of Holland and Holland, of Russell, argued the cause and was on the brief for appellant.

*Thomas V. Black*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Audra Corinna Watson, from her conviction of attempting to smuggle contraband into the Pratt County jail. The contraband consisted of 10 cigarettes in an envelope, which cigarettes are prohibited in that jail. Watson challenges the constitutionality of K.S.A. 2001 Supp. 21-3826. She concedes the statute is constitutional as applied, but contends it is facially unconstitutional.

On April 16, 2000, Watson visited an inmate at the Pratt County jail. As Sheriff's Deputy Harry Williams stood in the dispatch office in the law enforcement center, he noticed a reflection of a person kneeling near the door to the jail. Williams walked into the jailer's office and asked Watson what she was doing. She was still kneeling in front of the door. Without answering, Watson stood up and walked through the doorway into the visitation room where she began talking to an inmate.

Williams asked the jailer to open the door where Watson had been kneeling, and there they recovered a white envelope containing 10 Camel cigarettes. When Williams confronted Watson with the cigarettes and asked her why she had slid them under the door, Watson replied, "I was asked to." Watson would not tell officers anything else, so Williams placed her under arrest. The complaint charged Watson with introducing or attempting to introduce contraband into a correctional facility contrary to K.S.A. 21-3826.

The jailer, Charles Collins, testified that according to Pratt County jail policy, no tobacco is allowed in the jail. All inmates of the jail are given a sheet of paper explaining that no tobacco products are to be used within the jail. Jail visitors, however, are not given the written explanation of the tobacco policy. A sign posted outside the law enforcement center reads, in pertinent part: "ITEMS ALLOWED TO BE GIVEN TO INMATES: MONEY,

SOCKS, UNDERWEAR, RELIGIOUS ARTICLES, NEEDED MEDICATION-NO EXCEPTIONS."

According to Collins, jail visitors can bring items to the jailers to give to the inmates. The jailers check the items for contraband before passing them on to the inmates.

The prisoners are behind a glassed-in area and talk to visitors through a telephone. There is no physical contact and can be no physical contact between a prisoner and the visitor.

On November 14, 2000, the parties submitted their cases on stipulated facts before Judge Robert J. Schmisseur in the District Court of Pratt County. The parties stipulated to the evidence that could be considered by the court, Watson preserved her right to appeal all legal arguments, and the State agreed that it would not seek an upward dispositional or durational departure. Waiving all oral argument, Watson and the State submitted the matter to the court for a determination of guilt or innocence.

Judge Schmisseur issued a memorandum decision on December 4, 2000, finding Watson guilty of trafficking in contraband in a correctional facility in violation of K.S.A. 21-3826, a level 6 non-person felony. The judge found that the presence of a large "No Smoking" sign at the public entrance, coupled with the sign listing the types of items that could be given to inmates, clearly communicated "the prohibition on tobacco cigarettes." Further, the judge found that the administrator of the correctional institution did not consent to Watson's attempt to introduce cigarettes into the jail.

Watson was sentenced to 24 months of probation with community corrections and a post-release supervision term of 24 months on January 17, 2001. Watson timely filed this appeal on January 19, 2001, pursuant to K.S.A. 22-3601.

## I. K.S.A 21-3826; UNCONSTITUTIONALLY VAGUE

On appeal, Watson disputes the constitutionality of K.S.A. 21-3826, framing two challenges. For her first challenge, Watson contends that the broad definition of contraband in K.S.A. 21-3826 is unconstitutionally vague in violation of due process of law.

"A challenge to the constitutionality of a statute is a question of law. Our scope of review is, accordingly, unlimited. [Citation omitted.]" *State v. Ponce*, 258 Kan. 708, 709, 907 P.2d 876 (1995).

The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken, it must clearly appear the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. See *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

"The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." *State v. Huffman*, 228 Kan. 186, Syl. ¶ 5, 612 P.2d 630 (1980).

K.S.A. 2001 Supp. 21-3826 states in pertinent part:

"(a) Traffic in contraband in a correctional institution is introducing or attempting to introduce into or upon the grounds of any correctional institution or taking, sending, attempting to take or attempting to send from any correctional institution or any unauthorized possession while in any correctional institution or distributing within any correctional institution, *any item without the consent of the administrator of the correctional institution.*

"(b) For purposes of this section, 'correctional institution' means any state correctional institution or facility, conservation camp, state security hospital, juvenile correctional facility, community correction center or facility for detention or confinement, juvenile detention facility or jail.

"(c)(1) Traffic in contraband in a correctional institution of firearms, ammunition, explosives or a controlled substance which is defined in subsection (e) of K.S.A. 65-4101, and amendments thereto, is a severity level 5, nonperson felony.

(2) Traffic in any contraband, as defined by rules and regulations adopted by the secretary, in a correctional institution by an employee of a correctional institution is a severity level 5, nonperson felony.

"(d) Except as provided in subsection (c), traffic in contraband in a correctional institution is a severity level 6, nonperson felony." (Emphasis added.)

The history of the statute reveals that it was first enacted in 1969 and amended several times thereafter. The legislature substantially amended K.S.A. 21-3826 in 1997, removing a laundry list of items defined as contraband and adding subparagraphs (c)(1) and (c)(2). "Prior to 1992, K.S.A. 21-3826 specified what items were contra-

band, and the crime was limited to those items unless consent had been given." *Ponce,* 258 Kan. at 710.

The express language of K.S.A. 2001 Supp. 21-3826 challenged by Watson has not been changed since the 1997 amendments. However, there are no prior cases that considered whether K.S.A. 21-3826 is impermissibly vague. This court has previously set forth the test for determining whether statutory language is vague.

> "A criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice. The determination of whether a criminal statute is unconstitutionally vague involves a second inquiry of whether the law adequately guards against arbitrary and discriminatory enforcement. When making either inquiry, the court should bear in mind that the standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement." *State v. Bryan,* 259 Kan. 143, Syl. ¶ 2, 910 P.2d 212 (1996).

Our test reflects principles of constitutional law outlined by the United States Supreme Court. The Court has previously written:

> "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. City of Rockford,* 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972) (quoting *Baggett v. Bullitt,* 377 U.S. 360, 372, 12 L. Ed. 2d 377, 84 S. Ct. 1316 [1964]).

Our research disclosed no statutory provisions requiring county or municipal jail authorities to impart to visitors that the possession of tobacco could trigger a felony prosecution under K.S.A. 21-3826, or to disclose a list of other items that are considered contraband.

In *State v. Adams,* 254 Kan. 436, 866 P.2d 1017 (1994), the Chief of Police of St. John, Kansas, was charged with two counts of official

misconduct. The applicable statute made it a crime for a public official to willfully perpetrate an act of misconduct but did not expressly list types of prohibited misconduct. There, we found the word "misconduct" made the statute impermissibly vague, observing that because of "the great divergence of opinion held in our society as to what is acceptable or proper behavior, misconduct is in the eye of the beholder." 254 Kan. at 444.

In *Adams,* we also spoke of the second part of the vagueness analysis, which consists of a determination of whether the statute " 'adequately guards against arbitrary and discriminatory enforcement.' [Citations omitted.] When making either inquiry, the court should bear in mind that '[t]he standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement.' [Citation omitted.]" 254 Kan. at 439.

Our research for persuasive authority on this subject uncovered few cases factually similar to the case before us challenging the constitutionality of a contraband statute. Three cases merit attention, however.

In *United States v. Park,* 521 F.2d 1381 (9th Cir. 1975), Loretta Mae Park was convicted of attempting to bring 30 Valium tablets concealed in a Vaseline-coated balloon into a federal correctional institution in violation of the federal contraband statute, 18 U.S.C. § 1791 (2000). Park appealed her conviction, alleging that the federal contraband statute was unconstitutionally vague and overbroad.

The federal contraband statute challenged in *Park* prohibited the introduction or attempt to introduce anything " 'without the knowledge and consent of the warden or superintendent.' " 521 F.2d at 1383. Park argued that statute could possibly cover such things as artificial limbs, pens, and partial dental plates, and contended that the only way to comply with the statute was to enter the grounds of a correctional institution stark naked.

The Ninth Circuit Court of Appeals stated that "[u]nder a plain reading of the language of the statute, until a rule is made prohibiting the bringing in or removal of certain items from prison grounds, the statute's prohibitions do not come into play." 521 F.2d

at 1383. Therefore, the court did not find the statute was inherently vague or overbroad simply because it delegated to the attorney general the task of determining what items were considered contraband. However, the court did not end its analysis there. The *Park* court continued with an analysis of whether the statute was implemented by prison authorities in a constitutionally acceptable matter. The court noted:

"Before a person is admitted to visit an inmate at a federal correctional institution, certain procedures must be complied with. First, one must be approved as a visitor. When a visitor has been placed on the approved list, along with the notification of approval, the warden sends the visitor a printed letter of regulations pertaining to prison visits [citation omitted]. Second, each and every time a visitor arrives at the prison, he is required to fill out and sign a visitor's form [warning that the introduction or attempt to introduce contraband is punishable by up to 10 years' imprisonment]." 521 F.2d at 1384.

Because Parks was given visitor's forms notifying her that visitors were prohibited from bringing drugs into the prison during her 228 previous visits, the Court found she received sufficient notice that her conduct was prohibited criminally. Limiting its opinion to the *Parks* case alone, the Court of Appeals found the constitutional challenge meritless.

This case illustrates the general principle that a statute is not necessarily vague or overbroad simply because the legislature delegates the authority to determine what items constitute contraband to an agent or an agency. Yet, the broad authority granted by this type of statute demands that procedural safeguards are in place, *i.e.*, adequate notice to prison visitors, in order to ensure that the statute is implemented in a constitutional manner.

Next, we turn to *People v. Holmes*, 959 P.2d 406 (Colo. 1998). There, attorney Holmes visited a client who was incarcerated in the Mesa County detention facility. Holmes was charged with violating the Colorado contraband statute after an envelope from Holmes' law firm containing cigarettes and a book of matches was discovered on the floor of the visitation room. Holmes filed a motion to dismiss the charges, and the trial court granted the motion, holding the contraband statute unconstitutional.

The Colorado contraband statute, like our statute, provided that each detention facility administrator promulgates a list of items considered to be contraband. The statute also requires the administrator of each detention facility to provide reasonable notice of those items determined to be contraband. Significantly, the statute requires each administrator to determine whether an item poses or may pose a security threat; therefore, an item is not considered contraband under the statute until such a determination has been made.

On appeal, the Supreme Court of Colorado first considered whether the statute violated the nondelegation doctrine and decided en banc that it did not. According to the *Holmes* court, the Colorado Legislature could properly delegate the authority to decide what items are contraband to the administrators of each detention facility.

Next, the *Holmes* court examined whether the detention facility had failed to provide adequate notice that cigarettes and matches were contraband. Holmes contended that the signs posted in the detention facility were defective because, even though they stated visitors were not allowed to give inmates tobacco, the signs failed to put the public " 'on notice that tobacco would cause a felony prosecution or that it would be considered "contraband" under the statute.' " 959 P.2d at 413. The Colorado Supreme Court agreed with Holmes that the contraband statute demands notice "that introducing specific items into the facility is criminal conduct." 959 P.2d at 414. Further, the court noted that "the notice must be sufficient to allow a visitor to ascertain whether introducing a certain item violates the Contraband Statute." 959 P.2d at 417. Thus, although the Colorado Supreme Court held that the contraband statute was constitutional, it found the notice provided by the detention facility inadequate. 959 P.2d at 418.

Finally, in *People v. Carillo*, 323 Ill. App. 3d 367, 751 N.E.2d 1243 (2001), the Illinois Appellate Court considered whether Carillo brought contraband into a penal institution when he locked beer in his car in the prison parking lot. The Illinois statute prohibits the introduction of contraband into penal institutions and expressly lists items of contraband, such as cellular phones, com-

puters, pagers, broken bottles, safety flares, as well as "weapons," a term "broadly defined to cover anything from tire irons to golf clubs." 751 N.E.2d at 1244-45. The *Carillo* court reasoned:

"Many of our penal institutions allow family and friends to visit prisoners. In order to ensure prison safety and security, the law prohibits those visitors from bringing certain things with them when they come into the penal institution [citation omitted]. . . .

"[I]n addition to obvious contraband like illegal drugs or firearms, visitors must refrain from bringing a host of intrinsically innocent items with them when they enter a jail or a prison.

. . . .

"Given the kinds of items that now compose the statute's expansive contraband list, the crime of bringing contraband into a penal institution must receive a strict and narrow reading to preserve its validity.

. . . .

"[A] broader reading of the statute would present a serious question of constitutionality.

"The United States Supreme Court noted long ago: 'If the legislature undertakes to define by statute a new [offense] and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime.' *United States v. Reese*, 92 U.S. 214, 220, 23 L. Ed. 563, 656 (1875). . . .

"Few people of common intelligence would know that driving onto a visitors' parking lot with items that are legal to possess outside of a jail or a prison violates a law that prohibits 'bringing contraband into a penal institution.' Most people would think that they could comply with the law by leaving items that authorities did not want them to bring into the penal institution securely locked inside of their cars. The construction of the statute used to convict Pedro Carillo would deceive many a well-minded person and allow for unnoticed and unwitting criminal sanction." 751 N.E.2d at 1244, 1248, 1250.

The *Carillo* case illustrates the principle that due process requires nondeceptive notice such that every person is able to know with certainty when he or she is committing a crime. The *Holmes* court expressed a similar concern, and stated:

"Generally speaking, where the law imposes criminal liability for certain conduct, the scienter element requires 'no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.' [Citation omitted.] This general rule is based on the deeply-rooted principle that ignorance of the law or mistake of law is no defense to criminal prosecution. [Citations omitted.] 'Based on the notion that the law is *definite* and *knowable*, the common law presumed that every person

knew the law.' *Cheek v. United States*, 498 U.S.192, 199, 111 S. Ct. 604 (emphasis supplied).

"The rule that ignorance of the law will not excuse its violation is limited, however, by the constitutional demands of due process. *See Lambert*, 355 U.S. at 228, 78 S. Ct. 240. 'Engrained in our concept of due process is the requirement of notice.' *Id*. Thus, a law violates due process if it is so vague that its prohibitions are not clearly defined. [Citations omitted.]

. . . .

"The due process requirement that a statute clearly define the prohibited conduct is not relaxed simply because the statute delegates certain decisions to an agent or agency. In such a situation " '[t]he responsibility to promulgate clear and unambiguous standards is on the [agency].' " *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995). Furthermore, where a violation of an agency regulation subjects a party to criminal sanctions, 'a regulation cannot be construed to mean what an agency intended but did not adequately express [and] the [administrative head of the agency] has the responsibility to state with ascertainable certainty what is meant by the standards he has promulgated.' *Gates & Fox Co. v. Occupational Safety & Health Review Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986)." 959 P.2d at 414-15.

It is constitutionally permissible for the legislature to vest the administrators of correctional institutions with the authority to determine what items constitute contraband; however, adequate safeguards must be in place to ensure that the statute is not implemented in an unconstitutional manner.

Administrators of correctional facilities must provide persons of common knowledge adequate warning of what conduct is prohibited for two reasons: to provide fair notice and to safeguard against arbitrary and discriminatory enforcement.

Watson does not challenge the constitutionality of K.S.A. 21-3826 as applied, but contends it is facially unconstitutional.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment. [Citation omitted.]" *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987).

We do not find K.S.A. 2001 Supp. 21-3826 constitutionally inadequate on its face.

## II. SEPARATION OF POWERS DOCTRINE

For her second challenge, Watson argues that K.S.A. 21-3826 impermissibly delegates legislative authority to the administrator of the Pratt County jail, violating the separation of powers doctrine.

A challenge to the constitutionality of a statue is one of law, and our review is de novo and unlimited. See *Bryan*, 259 Kan. at 145.

In *Ponce*, this court held that the 1994 version of the statute did not unlawfully delegate legislative authority in violation of the separation of powers doctrine. There, we examined the legislative change abandoning a statutory list of contraband in favor of making all items contraband unless consent was obtained by the administrator of the correctional institution in question. In *Ponce*, we observed:

"The federal statute that defines the comparable federal crime, 18 U.S.C. § 1791 (1994), is very similar to the present Kansas statute and has withstood various constitutional challenges based upon the separation of powers doctrine. See, *e.g.*, *Carter v. United States*, 333 F.2d 354 (10th Cir. 1964).

"The legislature could have provided more in the way of standards in the statute than it did, but the failure to do so is not a fatal defect. *We conclude K.S.A. 1994 Supp. 21-3826 is not a constitutionally impermissible delegation of legislative authority.*" (Emphasis added.) 258 Kan. at 716.

Watson observes that the *Ponce* decision involved an almost identical issue: whether K.S.A. 21-3826 violated the separation of powers doctrine by allowing the administrator of the Department of Corrections to determine which items qualified as contraband. Watson attempts to distinguish *Ponce* by arguing that it dealt with the Secretary of the Department of Corrections while the present case involves the administrator of the Pratt County jail.

Under K.S.A. 1994 Supp. 21-3826 and the presently applicable version of the statute, the definition of correctional institution includes any jail. K.S.A. 2001 Supp. 21-3826; *Ponce*, 258 Kan. at 710. Thus, Watson's argument that the *Ponce* holding does not extend to the administrator of the Pratt County jail rings hollow.

We find *Ponce* dispositive of the separation of powers issue raised by Watson. Therefore, Watson's argument that K.S.A. 21-3826 impermissibly delegates legislative authority to the adminis-

trator of the Pratt County jail in violation the separation of powers doctrine fails. See *Ponce*, 258 Kan. at 711.

Affirmed.