NOT DESIGNATED FOR PUBLICATION

No. 124,469

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRISTA G. HINOSTROZA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed November 23, 2022.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and SCHROEDER, JJ.

PER CURIAM:  A jury convicted Crista G. Hinostroza of possession of a weapon by
a felon, traffic in contraband into a correctional facility, and interference with a law
enforcement officer. Hinostroza timely appeals, claiming there was insufficient evidence
she intended to traffic contraband in a correctional facility when the handgun carried in
her bra was discovered as she was searched upon being admitted to the Lyon County Jail
on an arrest warrant for another matter. She further contends the jury instruction on
trafficking contraband was incorrect because it did not require individualized notice that

1

it was a crime to bring a weapon into the jail. Upon review of the issues, we find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2020, Lyon County police officers were dispatched for a report of a person refusing to leave a house. Upon arrival at the scene, the officers contacted Hinostroza and determined she had active warrants. Hinostroza resisted arrest. Once Hinostroza was handcuffed, an officer asked Hinostroza if she had any guns or knives on her person. Hinostroza responded "no" but admitted she had a syringe in her bra. Officer Zachary Shafer's body cam footage was unclear but seemed to suggest Hinostroza said she did have a weapon but disclosed only the syringe in her bra. Shafer did not pat down Hinostroza at that time because of where the paraphernalia was located on Hinostroza's person. Shafer then transported Hinostroza to the Lyon County Detention Center. At the detention center, Shafer told the detention staff he did a visual search of Hinostroza and alerted them to the needle in Hinostroza's bra. Detention staff located a Phoenix .22 caliber handgun in Hinostroza's bra along with the syringe.

The State charged Hinostroza with criminal possession of a weapon by a felon in violation of K.S.A. 2020 Supp. 21-6304(a)(2); traffic in contraband into a correctional facility in violation of K.S.A. 2020 Supp. 21-5914(a)(1); interference with a law enforcement officer in violation of K.S.A. 2020 Supp. 21-5904(a)(3); and battery on a law enforcement officer in violation of K.S.A. 2020 Supp. 21-5413(c)(1)(B). At trial, the district court allowed the State to present limited evidence establishing Hinostroza had spent time in the Lyon County Jail on work release and knew about the jail's rules before the incident in December 2020.

Hinostroza stipulated and admitted she was housed in the Lyon County Jail in April 2016 while she participated in a work release program. Hinostroza also stipulated

2

and admitted she had been convicted of felony theft in January 2019 in Lyon County but did not possess a firearm at the time of the prior crime. The stipulation—signed by Hinostroza—also stated she understood she had the right to require the State to prove such facts beyond a reasonable doubt at trial and had the right to have a jury determine such facts from the evidence presented, but she waived her right to a jury trial determination of those specific facts.

The jury convicted Hinostroza of criminal possession of a firearm, trafficking contraband in a correctional facility, and interference with a law enforcement officer. Hinostroza was found not guilty of battery on a law enforcement officer. The district court sentenced Hinostroza to a controlling term of 49 months' imprisonment for the primary offense of trafficking contraband in a correctional facility and ordered all other sentences to run concurrent with the primary offense.

ANALYSIS

*Sufficiency of the Evidence*

Hinostroza argues there was insufficient evidence to determine she committed a voluntary act in introducing contraband into the jail and insufficient evidence she had the requisite mental state to commit such crime. Hinostroza also argues there was insufficient evidence to convict her of trafficking contraband into the jail because of a lack of individualized notice of what constituted contraband.

*Standard of review*

The standard of review for a sufficiency of the evidence challenge in a criminal case requires us to "'review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a

3

reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). There must be evidence supporting each element of the crimes charged to meet the sufficiency of the evidence standard. *State v. Kettler*, 299 Kan. 448, 471, 325 P.3d 1075 (2014). We will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Aguirre*, 313 Kan. at 209. It is only in rare cases in which the "evidence [is] so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). To the extent we must interpret K.S.A. 2020 Supp. 21-5914(a)(1), our review is unlimited. See *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

*Voluntary act*

Hinostroza contends she did not voluntarily introduce contraband into the Lyon County Jail because she was involuntarily arrested. Hinostroza relies heavily on caselaw from other jurisdictions to support her position.

K.S.A. 2020 Supp. 21-5914(a)(1), the section of the trafficking in contraband statute Hinostroza was convicted of violating, states:

"(a) Traffic in contraband in a correctional institution or care and treatment facility is, without the consent of the administrator of the correctional institution or care and treatment facility:

(1) Introducing or attempting to introduce any item into or upon the grounds of any correctional institution or care and treatment facility."

K.S.A. 2020 Supp. 21-5201 provides:

"(a) A person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession.

"(b) A person who omits to perform an act does not commit a crime unless a law provides that the omission is an offense or otherwise provides that such person has a duty to perform the act."

Hinostroza appears to focus on the fact she did not go to jail voluntarily as Lyon County police officers arrested her for active warrants and transported her to jail. In *State v. Conger*, No. 92,381, 2005 WL 1561369, at *3 (Kan. App. 2005) (unpublished opinion), a panel of this court found it significant the defendant had been arrested and taken to jail involuntarily rather than to visit an inmate on her own terms. The panel noted:

"[Conger] had little or no time to prepare herself for her entrance into the jail facility or to take stock of the personal belongings in her possession. . . . [P]eople entering a correctional facility must be given adequate warning of what conduct is prohibited in the facility. Along the same lines, people must be given reasonable time to comply with the facility's regulations and to hand over any items which might fit the definition of contraband. This is necessary to safeguard against arbitrary and discriminatory enforcement of the statute." 2005 WL 1561369, at *3.

Conger was not asked if she possessed contraband or instructed to turn over contraband when the officer booked Conger into the jail. Instead, Conger voluntarily handed over a prescription pill that was legal for her to possess outside the correctional facility.

*State v. Thompson*, No. 111,932, 2015 WL 9286794 (Kan. App. 2015) (unpublished opinion), is more analogous to this case. Thompson was pulled over in a traffic stop and arrested for an active warrant. Prior to taking Thompson to jail, the trooper asked Thompson if she had anything illegal on her person and advised Thompson of the consequences of taking anything illegal with her into the jail. Thompson denied having anything illegal on her. When Thompson was strip searched at the correctional

5

facility, an officer found marijuana. The *Thompson* panel noted Thompson did not voluntarily turn over the marijuana and the booking officer found the marijuana during a search. The panel pointed out it would have been a crime for Thompson to have the marijuana no matter when it was discovered. 2015 WL 9286794, at *3. The same is true here as it was a crime for Hinostroza—a convicted felon—to possess a weapon no matter when it was discovered.

Shafer directly asked Hinostroza if she had any drugs or weapons, including guns or knives, on her person. Hinostroza admitted she had a syringe in her bra but stated she did not have any weapons. Shafer testified he did not feel it was appropriate to perform a pat-down search of Hinostroza's bra area in the field and told the detention staff about the syringe when he arrived at the Lyon County Jail with Hinostroza.

Lieutenant Mindy Noetzel, the female officer who searched Hinostroza at the Lyon County Jail, explained:

> "[Hinostroza] kind of hid herself in the corner [of the holding cell] and she said, 'I will get it.' And I said, 'No, I will get it.' And so I wouldn't unhook her [bra].
> "So I went ahead and performed the search the best I could. And I don't think— she didn't really have a choice but to let me because I was not—I had two female officers securing her—both sides of her and I was performing the taking her clothing off in the front."

Hinostroza testified she wanted to retrieve the items in her bra herself rather than having the officers search her so she could take responsibility for her actions. During that time, Hinostroza failed to admit she possessed a handgun even though she was then being searched by a female officer. Just as in *Thompson*, and contrary to *Conger*, at no point did Hinostroza volunteer she had a handgun hidden in her bra. Instead, when Shafer directly asked Hinostroza if she had any weapons before transporting her to jail, Hinostroza said no.

The *Thompson* panel explained Thompson probably did not hide the marijuana intending to sneak it into jail, but "she did nothing to stop or prevent the introduction of the marijuana into the correctional institution." 2015 WL 9286794, at *4. The same is true for Hinostroza. While she probably did not hide the handgun intending to sneak it into jail, she did nothing to stop or prevent the introduction of the handgun into the jail when asked if she had any weapons, unlike admitting she had a syringe. Viewing the evidence in the light most favorable to the State, a rational fact-finder could have found Hinostroza committed a voluntary act in bringing contraband into the jail.

*Requisite mental state*

Hinostroza next argues she did not intend to go to jail and did not intend to traffic contraband into the jail. Further, she argues she was given only one opportunity to discuss any contraband she may have had on her before arriving at the jail and was not informed that failure to disclose the handgun in her bra would result in an additional crime.

The State charged Hinostroza with intentionally trafficking contraband. "[A] culpable mental state is an essential element of every crime . . . ." K.S.A. 2020 Supp. 21-5202(a). "A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2020 Supp. 21-5202(h).

Hinostroza claims she did not tell officers about the handgun in her bra because she was uncomfortable with male officers and knew she would be searched once she was at the jail. Yet, Hinostroza told Shafer, a male officer, about the syringe in her bra. Shafer did not perform a pat-down search in the field where Hinostroza was arrested. Hinostroza

claimed she was comfortable with Noetzel—a female officer—but still consciously chose not to alert Noetzel about the handgun in her bra as Noetzel began the search.

Hinostroza also claims she was provided only one opportunity to tell the officer about any contraband prior to being transported to jail and was not informed her failure to disclose would be an additional crime. Her argument is unpersuasive as she could have told the officer about the handgun in her bra at any point before arriving at the jail, and she was—or should have been—aware it was a crime for her to possess a weapon as a felon. Hinostroza testified she was familiar with the procedures at the Lyon County Jail as well as the employees who work there. Hinostroza acknowledged she knew upon entering the jail the officers would search her and find the gun in her bra.

We find this case differs from *Conger*, where the defendant lacked criminal intent because she voluntarily handed over a pill when being admitted to jail. Here, Hinostroza did not voluntarily hand over the handgun or tell the arresting officer about the handgun. Rather, she intentionally failed to disclose she had the gun, knew it would be discovered, and was uncooperative with the officers performing the search of her body upon entering the jail. Hinostroza was familiar with the jail rules and still entered the facility with the handgun carried in her bra without telling any officers about the weapon.

*Sufficient notice*

Hinostroza next argues she did not receive individualized notice of the specific items prohibited from the Lyon County Jail. She contends the signs located around the jail warning individuals that contraband was prohibited "only generally listed contraband as weapons, tobacco, or illegal drugs." She further asserts her view of the sign when entering the jail may have been blocked when the door was opened.

8

In *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002), our Supreme Court explained:

> "It is constitutionally permissible for the legislature to vest the administrators of correctional institutions with the authority to determine what items constitute contraband; however, adequate safeguards must be in place to ensure that the statute is not implemented in an unconstitutional manner.
>
> "Administrators of correctional facilities must provide persons of common knowledge adequate warning of what conduct is prohibited for two reasons: to provide fair notice and to safeguard against arbitrary and discriminatory enforcement."

The person must be given a warning of what conduct is prohibited and reasonable time to comply with facility regulations. *Conger*, 2005 WL 1561369, at *3. "[D]ue process requires nondeceptive notice such that every person is able to know with certainty when he or she is committing a crime." *Watson*, 273 Kan. at 434. Here, unlike in *Conger* where the signs in the jail did not define contraband, the signs in the Lyon County Jail specifically listed weapons as contraband. Hinostroza not only knew, or should have known, from previous time spent in the Lyon County Jail that her handgun was prohibited, but also the various signs around the jail specifically stated weapons were prohibited items, and she was asked at the time of her arrest and before entering the jail if she had any weapons on her person.

Hinostroza seems to narrowly argue she was not provided individualized notice. *State v. Taylor*, 54 Kan. App. 2d 394, 396, 401 P.3d 632 (2017), however, uses the term "'individualized notice'" in the sense that the notice must make clear what items correctional facility administrators are prohibiting as contraband. The signs in the Lyon County Jail do just that as they clearly list weapons as contraband.

In *Taylor*, a panel of this court explained:

"Without making any exceptions regarding the nature of the items deemed contraband, our Supreme Court held that people are entitled to adequate notice of what items constitute contraband. This would give people adequate notice they could face criminal charges by bringing those items into the correctional institution. The individualized notice rectifies the fact notice is otherwise lacking in the trafficking in contraband statute. [Citation omitted.]" 54 Kan. App. 2d at 429.

In *State v. Smith*, No. 122,432, 2021 WL 4032850 (Kan. App. 2021) (unpublished opinion), *rev. denied* 316 Kan. ___ (July 5, 2022), Smith argued the inmate rulebook did not provide "'individualized' notice" of what was considered contraband. The *Smith* panel disagreed, finding that Smith had previously received a copy of the inmate rulebook identifying prohibited contraband and was provided sufficient notice what conduct constituted the crime of trafficking in contraband. 2021 WL 4032850, at *5.

Hinostroza contends the signs posted around the jail warned that bringing in contraband was prohibited under K.S.A. 21-3826, a statute which is no longer valid—but only because it has been recodified. See K.S.A. 2020 Supp. 21-5914. Regardless, Hinostroza admitted she was familiar with the jail rules and was placed on notice weapons were not permitted. The State presented evidence supporting each element of the crime charged. Viewing the evidence in the light most favorable to the State, we are convinced the evidence was not "so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" Hinostroza intentionally trafficked contraband in a correctional facility. See *Torres*, 308 Kan. at 488.

*Jury Instruction*

Hinostroza contends the jury instruction on trafficking contraband was incorrect because it instructed the jury to consider whether Hinostroza received notice the weapon was forbidden at the jail, but not *individualized* notice.

When considering instructional issues, appellate courts first consider "the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). Appellate courts then consider whether the instruction was legally and factually appropriate. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). "[F]inally, if the district court erred, the appellate court must determine whether the error was harmless." *Plummer*, 295 Kan. at 163.

The appellate court's reversibility inquiry depends on whether a party properly preserved the jury instruction issue below. *McLinn*, 307 Kan. at 317. Unpreserved instructional errors are reviewed for clear error. K.S.A. 2021 Supp. 22-3414(3). Jury instructions are clearly erroneous if an error occurred and the reviewing court is "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *McLinn*, 307 Kan. at 318. The party claiming clear error carries the burden to establish the prejudice. 307 Kan. at 318. Hinostroza failed to object to the instruction below; thus, she did not preserve the issue for appeal. We will apply the clear error standard.

Here, the district court instructed the jury on trafficking contraband in a correctional institution by using the Pattern Instructions for Kansas (PIK) Crim. 4th 59.110 (2019 Supp.). The instruction stated, in relevant part: "The defendant was provided notice that the weapon was forbidden within or upon the grounds of the Lyon County Jail."

11

The trafficking in contraband statute provides persons may be convicted of trafficking in contraband when they bring *any item* into a correctional institution without the consent of the administrator of the correctional institution. K.S.A. 2020 Supp. 21-5914(a). Our Supreme Court has explained the statute must be applied in a constitutional manner and the administrators must provide notice to those entering a correctional facility what items are prohibited. *Watson*, 273 Kan. at 435.

Again, the *Taylor* panel explained:

"Without making any exceptions regarding the nature of the items deemed contraband, our Supreme Court held that people are entitled to adequate notice of what items constitute contraband. This would give people adequate notice they could face criminal charges by bringing those items into the correctional institution. The individualized notice rectifies the fact notice is otherwise lacking in the trafficking in contraband statute. [Citation omitted.]" 54 Kan. App. 2d at 429.

We do not interpret *Taylor* as heightening the notice requirement. Rather, *Taylor* is clarifying that individuals entering a correctional facility must be provided adequate notice of what items constitute contraband. Under *Taylor*, Hinostroza was provided notice through the jail signs specifying weapons were included on the list of prohibited items. Even if Hinostroza did not see the particular sign on the door when she entered the jail, the State presented evidence Hinostroza was familiar with the signs in the jail from prior experience. Hinostroza also admitted she knew weapons were prohibited. We are convinced the jury would not have reached a different verdict had the district court instructed it to find Hinostroza was provided individualized notice the possession of a handgun was a crime within or upon the grounds of the Lyon County Jail.

Affirmed.