No. 114,779

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALBERT DONETT TAYLOR, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

To be convicted of theft, the State must establish that the defendant acted "with the intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services" at issue. Whether a defendant acted "with the intent to" commit a theft speaks to whether the defendant had the requisite culpable mental state to commit the theft, which is an essential element of the crime.

2.

Nothing within the plain language of the theft statute provides that persons who are found to be in possession of stolen firearms are guilty of theft regardless of whether those persons had knowledge that the firearms they possessed were stolen. Under no circumstances is the State relieved of its duty of establishing that the defendant acted with the intent to commit theft.

3.

A prosecutor who tells the jury that it is the legislature's desire to convict persons who possess stolen firearms of theft regardless of whether those persons had knowledge that the firearms they possessed were stolen has committed prosecutorial error under the standard of review set forth in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

1

Such a statement not only misstates the law but also erroneously conveys to the jury that the prosecutor is the final arbiter on the legislature's intent.

4.

When the State has prosecuted persons for theft based solely upon their possession of stolen property, sufficient evidence to support those persons' convictions exists only if (1) they provided unsatisfactory explanations for why they possessed the stolen property, and (2) the property they possessed had been recently stolen. Stolen property found in the possession of a person 14 to 20 months after it has been reported stolen is too remote in time to be considered recently stolen.

5.

Our Supreme Court's decision *State v. Watson*, 273 Kan. 426, 44 P.3d 357 (2002), makes clear that because the trafficking in contraband statute does not define what items constitute contraband inside correctional institutions, the trafficking in contraband statute could lawfully prohibit the introduction or attempted introduction of contraband only if the correctional institution's administrator has given notice of what items constitute contraband. This notice requirement exists even when the items deemed contraband inside a correctional institution are also items that are illegal to possess outside a correctional institution.

6.

When a person is convicted of trafficking in contraband but was not given notice that the item of contraband that he or she was trafficking or attempting to traffic constituted contraband, the trafficking in contraband statute has been applied to that person in a way inconsistent with constitutional due process, rendering the person's conviction invalid.

Appeal from Johnson District Court; *Thomas M. Sutherland*, judge. Opinion filed July 21, 2017. Reversed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*James Crux,* legal intern, *Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MCANANY, JJ.


GREEN, J.:  Following a jury trial, Albert Donett Taylor, Jr., was convicted of theft, trafficking in contraband, possession of marijuana, and driving with a suspended license. Taylor appeals his felony theft and trafficking in contraband convictions. Regarding his theft conviction, Taylor makes two arguments:  (1) that the prosecutor committed reversible error during closing arguments by stating the jury could convict him of theft of a stolen firearm regardless of whether he actually knew that the firearm had been stolen; and (2) that the trial court erred by denying his motion for judgment of acquittal because insufficient evidence supported his theft conviction. Regarding his trafficking in contraband conviction, Taylor makes four arguments that hinge on his belief that he was entitled to receive notice of what items were deemed contraband inside the jail. Those four arguments are as follows:  (1) The trafficking in contraband statute is unconstitutional as applied to him because he received no notice; (2) the evidence was insufficient to convict him because he received no notice; (3) the trial court was required to give his requested instruction on the notice; and (4) the prosecutor committed error by telling the jury the State had no burden to prove notice. Taylor also argues that the trial court prejudiced his defense by giving a jury instruction that broadened the culpable mental state needed to convict him. Last, Taylor argues cumulative error.

For reasons set forth below, we need not reach Taylor's cumulative error argument because each of Taylor's individual arguments are meritorious. We conclude that the

3

prosecutor made a serious misstatement of the law when he stated in his closing argument that persons who are charged with theft of a firearm can be convicted of theft of that firearm regardless of whether they acted with the intent to permanently deprive the owner of the possession, use, or benefit of that firearm. Moreover, we conclude that insufficient evidence supported Taylor's theft conviction because there was inadequate evidence showing that he knew he was in possession of a stolen firearm. In regards to Taylor's trafficking in contraband conviction, Taylor arguments concern the "individualized notice" requirement that persons are entitled to notice of what items are prohibited from coming within a correctional facility. Our Supreme Court adopted this notice requirement in *State v. Watson*, 273 Kan. 426, 436, 44 P.3d 357 (2002). Highly summarized, the trafficking in contraband statute was unconstitutional as applied to Taylor because he never received such notice. In turn, there was insufficient evidence to support Taylor's trafficking in contraband conviction. As a result, we reverse Taylor's theft and trafficking in contraband convictions.

*Factual Background*

On December 26, 2014, Deputy Christopher Pechnik responded to a car accident in Johnson County, Kansas. When Deputy Pechnik arrived at the scene of the accident, he found a single overturned car. Taylor, who was not injured, identified himself to Deputy Pechnik as the driver of the overturned car. Taylor told Deputy Pechnik that he might have fallen asleep while driving. Deputy Pechnik ran Taylor's name through the police database and discovered that Taylor was driving on a suspended license. When questioned about the status of his license by Deputy Pechnik, Taylor admitted that he knew his license was suspended. For this reason, Deputy Pechnik arrested Taylor.

Following Taylor's arrest, Deputy Pechnik conducted a search of Taylor's car. Deputy Pechnik had smelled an odor of marijuana emanating from both Taylor and Taylor's car. The search of Taylor's car resulted in police finding marijuana fragments

4

and two loaded handguns; one of the loaded handguns, a Smith and Wesson handgun, was found behind the driver's seat of Taylor's car. When booking Taylor into jail, Deputy Pechnik also discovered a baggie of marijuana inside one of Taylor's shoes. Also, a records check revealed that the Smith and Wesson handgun had been reported stolen by Michael Brown of Wyandotte County, Kansas.

Based on the preceding facts, the State charged Taylor with the following: (1) theft, a severity level 9 nonperson felony in violation of K.S.A. 2014 Supp. 21-5801(a); (2) possession of marijuana, a class A nonperson misdemeanor in violation of K.S.A. 2014 Supp. 21-5706(b)(3); (3) driving while suspended, a class B nonperson misdemeanor in violation of K.S.A. 2014 Supp. 8-262; and (4) trafficking in contraband, a severity level 5 nonperson felony in violation of K.S.A. 2014 Supp. 21-5914. The State charged Taylor under a theory of theft requiring Taylor to have obtained or exerted unauthorized control over the Smith and Wesson handgun with the intent to permanently deprive Brown of possession of the handgun on or about December 26, 2014. The State charged Taylor under a theory of trafficking in contraband requiring Taylor to have intentionally introduced or attempted to introduce marijuana into the Johnson County jail.

Taylor's jury trial was held on June 1, 2015, and June 2, 2015. The primary witness for the State was Deputy Pechnik. Deputy Pechnik testified about his interactions with Taylor on December 26, 2014, including discovering that Taylor was driving with a suspended license, smelling marijuana on Taylor's person, finding marijuana fragments in Taylor's car, and finding the Smith and Wesson handgun in Taylor's car. Deputy Pechnik's bodycam video of the search of Taylor's car was admitted into evidence and played for the jury. The video showed Deputy Pechnik touching the visor and steering wheel of Taylor's car while wearing gloves before picking up and unloading the Smith and Wesson handgun. Deputy Pechnik stated that when he asked Taylor about the Smith and Wesson handgun, Taylor told him that he was unaware that there were handguns in his car.

Deputy Pechnik testified that following the search of Taylor's car, he arrested Taylor for driving with a suspended license and drove him to the jail. Deputy Pechnik explained that when he brings a person to the jail, he has to drive through a secured gate, then enter a secured parking garage, and then finally enter a secured door which leads to the booking area of the jail. Deputy Pechnik testified that there was a sign on the secured door that leads to the booking area of the jail that stated "No illegal weapons or drugs." Deputy Pechnik explained that when he started the booking process with Taylor, he asked Taylor to take off all of his clothes, including his shoes, because all inmates must wear the same uniform. Deputy Pechnik stated that Taylor was hesitant to take off his shoes. Deputy Pechnik testified that based on Taylor's hesitation and the fact he continued to smell marijuana on Taylor while booking him, he decided to immediately search Taylor's clothing after admitting him into the jail. Deputy Pechnik explained that he quickly found a baggie of marijuana in one of Taylor's shoes. Deputy Pechnik's bodycam video of his interactions with Taylor during booking, which were admitted into evidence, establish that Taylor was hesitant to surrender his shoes.

Regarding the Smith and Wesson handgun, Deputy Pechnik testified that a records check of the handgun revealed that the handgun belonged to a man named Michael Brown who lived in Kansas City, Kansas. Deputy Pechnik explained that he spoke to Taylor shortly after December 26, 2014, about the handgun, and Taylor continued to deny having any knowledge about any handguns being in his car. Deputy Pechnik also explained that he asked Taylor for his DNA at that time because he wanted to see if Taylor's DNA was on the handgun. Deputy Pechnik stated that Taylor refused and told him the police had already taken a sample of his DNA at booking. Deputy Pechnik got a sample of Taylor's DNA after getting a search warrant.

On cross-examination, Deputy Pechnik testified that in addition to denying any knowledge about the handguns, Taylor had told him that there had been three other people in his car. When asked about who owned the car Taylor was driving, Deputy

Pechnik admitted that during his investigation, he learned that Taylor's car was actually a rental car that had been rented under Taylor's girlfriend's name.

Besides Deputy Pechnik, the supervisor of booking at the Johnson County jail and a few forensic scientists testified on behalf of the State. Sergeant Shane Thomas, who supervises bookings at the Johnson County jail, testified that he did not give Taylor permission to bring marijuana into the jail. Sergeant Thomas never testified that he personally told Taylor he could not bring the marijuana inside the jail. The forensic scientists testified to the following: (1) The Smith and Wesson handgun had Taylor's DNA located on its trigger; (2) the Smith and Wesson handgun also had DNA from four other individuals on it; and (3) the substance in the clear baggie removed from Taylor's shoe was in fact 5.21 grams of marijuana. On cross-examination, the forensic scientist who did the DNA testing agreed with Taylor's attorney that a process called "transfer DNA," which involves someone touching an item that another person had touched and then transferring that other person's DNA onto some other object, was possible.

Last, Michael Brown testified on behalf of the State. During his testimony, the State asked Brown whether the Smith and Wesson handgun disappeared in September of 2014, to which Brown responded, "I noticed that the box had been pried open, and called the police, and made a police report that it had been stolen out of my house." On cross-examination, however, when directly asked when he noticed that the Smith and Wesson handgun was missing, Brown testified that he believed it was taken from his house in the spring or the fall of 2013.

After the close of the State's evidence, Taylor moved for a judgment of acquittal on the theft and trafficking in contraband charges. Taylor's attorney argued that there was no evidence that Taylor had committed the theft on or about December 26, 2014, or in Johnson County. Regarding the trafficking in contraband charge, Taylor's attorney asserted that Kansas caselaw required that people have notice what items constitute

contraband inside a jail before those people can be charged with trafficking, and the State had failed to establish such notice. The prosecutor responded that the State had no burden to prove that Taylor knew that the Smith and Wesson handgun was stolen because "[t]he legislature in K.S.A. 21-5801 has differentiated why a firearm is different" based on the fact there was a penalty provision specifically addressing firearms. The prosecutor also responded that notice was not required with cases involving marijuana. Taylor's attorney responded that there was no evidence Taylor was involved in the theft. The trial court denied Taylor's motion as to the trafficking in contraband charge because it determined that the State had no burden of establishing notice for items that were not "intrinsically innocent" based on its reading of *State v. Conger*, No. 92,381, 2005 WL 1561369 (Kan. App. 2005) (unpublished opinion). The trial court simply stated that Taylor's motion for acquittal of the theft charge was denied.

Next, Taylor requested that the jury be instructed that Taylor was entitled to notice of what conduct was prohibited inside the jail under the trafficking in contraband law before he could be convicted of that crime. The trial court denied Taylor's request based on its interpretation of *Conger*. Also, over Taylor's objection, the trial court decided to give the jury the State's proposed instruction on the elements of trafficking in contraband, which stated Taylor could be convicted if he committed the crime "intentionally, knowingly, or recklessly" even though the complaint charged him with only "intentionally" committing trafficking in contraband.

After the jury instruction conference, Taylor presented his evidence, which consisted of recalling Deputy Pechnik to testify. While testifying on behalf of Taylor, Deputy Pechnik explained that he had went back to the sign on the jail's secured booking door after testifying for the State, and he had discovered that the sign on the door does not say "No illegal weapons or drugs." Instead, he testified that the sign only says "No firearms." Deputy Pechnik also testified that there were no signs in the jail stating that a person could not have marijuana in the jail.

The trial proceeded to closing arguments. During closing arguments, the prosecutor repeated his understanding of the theft law as it pertains to firearms, telling the jury that people found in possession of a stolen firearm were guilty of committing theft even if those people did not know that the firearm they possessed was stolen because this was what the legislature wanted. The prosecutor also told the jury that it could convict Taylor of trafficking in contraband regardless of whether he had received notice and if it believed he had acted intentionally, knowingly, or recklessly. Taylor's attorney's closing emphasized that Taylor had consistently denied having any knowledge that handguns were located in the rental car. Moreover, Taylor's attorney emphasized that Taylor had never intended to traffic the marijuana in jail and that Taylor had no notice that bringing the marijuana inside the jail would result in trafficking in contraband charges.

During jury deliberations, the jury came back with the following question: "What is the definition of 'theft' as it relates to the firearm and as related to the charge in Instruction No. 9?" Taylor and the State agreed to answer the jury's question by referring the jury back to the jury instructions. The jury found Taylor guilty on all counts.

After trial, Taylor moved for judgment notwithstanding the jury's verdicts or, in the alternative, a new trial. In this motion, Taylor argued that there was insufficient evidence to support his theft and trafficking in contraband convictions based on the same arguments that he had raised at trial. Taylor also argued that the trafficking in contraband statute was unconstitutional as applied to him. At the hearing, in addition to repeating the arguments made in his motion, Taylor emphasized that the sentencing enhancement provision for thefts involving firearms did not otherwise change the culpable mental state requirement to establish theft. The trial court denied Taylor's motion as to both his theft and trafficking in contraband convictions. Taylor was sentenced to a controlling sentence of 42 months' imprisonment followed by 24 months' postrelease supervision. The trial court ran Taylor's theft and trafficking in contraband convictions consecutively.

*Did the Prosecutor Commit Reversible Error by Telling the Jury that Kansas Law Does Not Require Persons to Know that an Item Was Stolen to be Convicted of Theft?*

Taylor asserts that the prosecutor's statement to the jury that persons can be convicted of theft of a firearm even though those persons had no knowledge the firearm was stolen was a misstatement of law that constituted error. Taylor further argues that this misstatement of law was not harmless (1) because "it lowered the State's burden to prove criminal intent" and (2) because the jury's question about "the definition of 'theft' as it relates to the firearm" showed the prosecutor's statement confused the jury.

On the other hand, the State contends that the "State did not have to prove that Taylor knew the Smith & Wesson [handgun] was stolen." The State reaches this conclusion by considering the elements of theft by obtaining or exerting unauthorized control of a handgun and asserting that there is no element requiring "that Taylor knew the Smith & Wesson was stolen." The State even asserts that it was Taylor's attorney who misstated the law to the jury when he said the State had the burden of proving that Taylor knew the firearm was stolen. Last, the State alleges that even if the prosecutor's statements constituted error, that error was harmless because sufficient evidence supported Taylor's conviction.

*Standard of Review*

In the recent decision *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016), our Supreme Court outlined the standard for reviewing prosecutorial error as follows:

"Appellate courts will continue to employ a two-step process to evaluate claims of prosecutorial error. These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude

10

afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.] We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]"

Furthermore, to the extent Taylor's argument involves statutory interpretation, statutory interpretation is a question of law over which this court exercises de novo review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule of statutory interpretation is that the legislature's intent governs. *State v. Jordan,* 303 Kan. 1017, 1019, 370 P.3d 417 (2016). Appellate courts should always attempt to ascertain the legislature's intent through the plain language of a statute before turning to the cannons of statutory construction. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

*Additional Facts*

Shortly after the prosecutor started his closing arguments, the prosecutor told the jury that theft of a firearm was a special crime that was different from other thefts. Specifically, the prosecutor stated that by looking at the theft elements instruction, the jury could "clearly see that the legislature has prescribed that possession of a stolen firearm in this case constitutes a theft."

11

During Taylor's closing, Taylor's attorney told the jury that it had to make its decision on the evidence, and the evidence showed "a gun was found under a floor mat in the back seat of Mr. Taylor's car, not that he stole that firearm." Taylor's attorney stated that "just because [the Smith and Wesson handgun] was a stolen firearm doesn't mean that [Taylor] knew about it."

During rebuttal, the prosecutor immediately began explaining that to convict Taylor of theft, the State was not required to prove that Taylor knew the handgun found in his car was stolen. The following are the specific statements made by the prosecutor that Taylor takes issue with on appeal:

"With all due respect to [Taylor's attorney,] in the last 15 minutes, what he is asking you to do is find reasonable doubt on elements that don't exist, that aren't required of you to look at. He made the statement that the State can't prove that Mr. Taylor stole a gun from Michael Brown's house. Totally agree with that[,] that would be a burglary in Wyandotte County, which I don't prosecute. I don't charge that. What I charge is possessing that gun here in Johnson County, possessing that gun specifically on December 26th, 2014, when he had it in the car.

". . . I don't care about how he came to have that gun. This isn't possession of stolen property, which [Taylor's attorney] mentioned, which requires knowledge that property is stolen. This is a different charge because it is a firearm. The State has decided that possession of a firearm, you don't have to know it is stolen. You have to have that gun, you have to have unauthorized control over that gun, and it has to be a firearm. Because firearms are regulated. It is meant to encourage people to go through proper channels, register firearms. Buy from a gun retailer. You get that gun through nefarious means and it is stolen, tough break. It means you are guilty of theft of a firearm."

*Theft Statutory Background*

The State charged Taylor under a theory of theft which required him to obtain or exert unauthorized control over Brown's firearm under K.S.A. 2016 Supp. 21-5801(a)(1), instead of a theory of theft by receiving stolen property under K.S.A. 2016 Supp. 21-5801(a)(4). In relevant part, K.S.A. 2016 Supp. 21-5801 states:

> "(a) Theft is any of the following acts done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services:
> > (1) Obtaining or exerting unauthorized control over property or services; [or]
> > . . . .
> > (4) Obtaining control over stolen property or services knowing the property or services to have been stolen by another."

Subsection (b), the penalty provision of the theft statute, outlines how the severity level of the theft varies based on the value of the property stolen and the type of property stolen. When the type of property stolen is a firearm valued under $25,000, like the handgun at issue in Taylor's case, K.S.A. 2016 Supp. 21-5801(b)(7) dictates that this theft constitutes a severity level 9 nonperson felony.

*The Prosecutor Misstated the Law: The Plain Language of the Theft Statute Requires All Thefts to be Committed "With the Intent To" Permanently Deprive the Owner of Property*

Taylor's primary argument why the prosecutor's statement to the jury constituted a misstatement of law is because the prosecutor's statement lowered the State's burden to prove the requisite culpable mental state. When defendants can establish that a prosecutor's statement misstated the law, then they have satisfied the first step of the prosecutorial error test because our Supreme Court has held that misstatements of law fall outside the wide latitude afforded to prosecutors, constituting error. See *State v. Phillips*,

13

299 Kan. 479, 504-05, 325 P.3d 1095 (2014). A quick analysis of the plain language of the theft statute establishes that not only did the prosecutor misstate the law, his misstatements conveyed to the jury that the legislature had *eliminated* the State's burden to prove the requisite culpable mental state.

Subsection (a) of K.S.A. 2016 Supp. 21-5202, the statute which defines and outlines the rules regarding the requisite culpable mental states to commit a crime, states that "[e]xcept as otherwise provided, a culpable mental state *is an essential element* of every crime defined by this code." Theft is not a strict liability crime under K.S.A. 2016 Supp. 21-5203. In fact, the requisite culpable mental state required to commit a theft is clearly stated in K.S.A. 2016 Supp. 21-5801(a), as it states:  Theft is . . . done *with intent to* permanently deprive the owner of the possession, use or benefit of the owner's property or services." (Emphasis added.) Thus, defendants cannot be convicted of any theft unless they acted "with the intent" to permanently deprive. "Intentionally" is the highest requisite culpable mental state. K.S.A. 2016 Supp. 21-5202(b)(1). "A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2016 Supp. 21-5202(h).

This means that for the State to meet its burden of proving Taylor guilty beyond a reasonable doubt, the State was required to prove that Taylor exerted or obtained unauthorized control over the firearm, *while having the conscious objective or desire to permanently deprive Brown from the possession, use, or benefit of the firearm.*

Nevertheless, the State makes two arguments why the prosecutor's statements were not erroneous. The State's first argument is that the prosecutor's statements were merely made in response to Taylor's attorney's misstatements of law. The State stresses that Taylor's attorney told the jury that no evidence showed that the theft occurred in Johnson County since the handgun was stolen from Brown's house in Wyandotte County.

14

The State also stresses Taylor's attorney's argument that no evidence showed the theft occurred on December 26, 2014, since Brown testified it was stolen sometime in 2013.

Regardless of the legal correctness of Taylor's attorney's arguments, the prosecutor's statement that the State did not have to prove that a person knew the handgun he or she possessed was a stolen handgun to convict that person of theft went well beyond Taylor's attorney's arguments about whether the charges against Taylor were otherwise defective. Moreover, even assuming the prosecutor's comments were made in response to Taylor's attorney's arguments, our Supreme Court has held that "'a prosecutor's improper comment or argument can be prejudicial, even if the [error] was extemporaneous and made under the stress of rebutting arguments made by defense counsel.' [Citation omitted]." *State v. Roeder*, 300 Kan. 901, 934, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

This leads to the State's second argument on appeal why the prosecutor's statements did not constitute misstatements of law. The State's second argument is that the plain language of the theft statute supports the prosecutor's statement that the State had no duty to establish that Taylor knew the handgun was stolen given that Taylor was charged under K.S.A. 2016 Supp. 21-5801(a)(1). The State argues that the elements of theft by obtaining or exerting unauthorized control of property under K.S.A. 2016 Supp. 21-5801(a)(1) do not include any language explicitly stating that a person must know the property was stolen. Although not clearly explained in its brief, it seems this argument relates to the prosecutor's argument below that because Taylor was not charged with theft by knowingly obtaining control over stolen property, the State had no burden to establish that Taylor knew the property was stolen.

In making this argument, the State never addresses the fact that K.S.A. 2016 Supp. 21-5801 explicitly states that persons must have committed theft under subsection (a)(1) "with the intent to permanently deprive the owner of possession, use or benefit of the

15

owner's property . . . ." Nor does the State address why K.S.A. 2016 Supp. 21-5202(a)'s rule that the stated culpable mental state of a criminal statute is an essential element of every crime does not apply in Taylor's case.

Every theft offense, without exception, involves stolen property. More importantly, every theft offense, without exception, requires that defendants know they have somehow gained control over stolen property. Consider thefts involving defendants actively engaged in stealing the property versus thefts involving defendants who have passively received stolen property knowing it was stolen by another. The defendants who were actively engaged in stealing the property would have the requisite culpable mental state to commit a theft because the act of taking the property from the owner establishes that it was their intent to deprive the owner of the possession, use, or benefit of the property. The defendants who knowingly received stolen property also have the requisite culpable mental state to commit a theft because the act of receiving the property that they know is stolen means they also intend to permanently deprive the rightful owner of the possession, use, or benefit of the property. Even thefts by deception or threat under K.S.A. 2016 Supp. 21-5801(a)(2) and (a)(3), which are not at issue in this case, involve property that was wrongfully taken, *i.e.*, stolen, with the intent to permanently deprive. Nevertheless, defendants who have no knowledge that the property they possess was stolen could never intend to permanently deprive the actual owner of the property because those defendants would believe that they were the actual owners of the property.

Additionally, although the State on appeal has abandoned the prosecutor's argument that the legislature has decided people who possess stolen firearms are guilty of theft regardless of whether those people knew the firearm they possessed was stolen, the errant reasoning the prosecutor actually used when telling the jury that it could convict Taylor of theft cannot be ignored. It is one of the bases for Taylor's prosecutorial error challenge and was adopted by the trial court when denying Taylor's motion for judgment of acquittal.

Once again, the prosecutor's argument, which it repeated to the jury during closing arguments, was that because K.S.A. 2016 Supp. 21-5801(b)(7) specifically provides that persons convicted of theft of a firearm valued under $25,000 are guilty of a severity level 9 person felony, the legislature intended to allow the State to prosecute and convict all persons who possess stolen firearms of theft regardless of whether those persons knew the firearms were stolen. The prosecutor explained that the legislature had decided that knowledge that the firearm had been stolen was not required as a way to "encourage persons to go through proper channels, register firearms" and to "[b]uy from a gun retailer." In essence, the prosecutor's reading of the theft statute makes possession of a stolen firearm a strict liability crime.

Nevertheless, it is readily apparent that the prosecutor's interpretation of the legislature's intent within the theft statute is errant for a number of reasons. For starters, as already established, theft is not a strict liability crime. Additionally, a fundamental rule of statutory interpretation is to look at the plain language of a statute, giving the ordinary words within the statute their ordinary meanings. *Barlow*, 303 Kan. at 813. Another fundamental rule is to avoid absurd statutory interpretations that result in the legislature enacting meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). Here, the prosecutor interpreted the theft statute in a manner that ignores the plain language requiring that all persons convicted of theft must have acted "with the intent to permanently deprive the owner of possession, use or benefit of the owner's property . . . ." K.S.A. 2016 Supp. 21-5801(a). This also means that the prosecutor interpreted the theft statute in a manner that renders the legislature's language that persons must intentionally commit thefts meaningless.

Likewise, part of looking to the plain language of a statute involves not reading language into a statute that is not readily found therein. *Barlow*, 303 Kan. at 813. Nothing within the theft statute speaks to the legislature's intent to have people buy firearms "through proper channels" and only "from a gun retailer." Indeed, it is inconceivable that

17

the prosecutor actually believed such legislative intent could be found from the penalty provision on theft of firearms, which simply states that thefts involving stolen firearms valued under $25,000 constitute severity level 9 person felonies. K.S.A. 2016 Supp. 21-5801(b)(7). Additionally, as Taylor emphasizes in his brief, such an assertion is also troubling because Kansas has no law requiring people to buy handguns from gun retailers. In fact, with the exclusion of convicted criminals possessing firearms, the legislature has generally decided to refrain from regulating firearm ownership. See K.S.A. 2016 Supp. 50-1201 *et seq.*; K.S.A. 2016 Supp. 75-7c01 *et seq*. Simply put, the prosecutor's interpretation of the theft statute was devoid of logic.

### *The Prosecutor's Error was Prejudicial*

Because the prosecutor's statements constituted error, we next examine whether the erroneous statements affected the outcome of Taylor's trial. Again, under this second step, we must reverse Taylor's conviction unless the State can show beyond a reasonable doubt that there was no reasonable possibility that the error contributed to the jury's guilty verdict. See *Sherman*, 305 Kan. at 109.

The extent of the State's argument why any error that occurred was harmless is that it presented sufficient evidence at trial to support Taylor's guilt. Specifically, the State believes the following evidence was so strong that it outweighs the prosecutor's misstatements of law:  (1) evidence supported that Taylor knew the firearm was stolen; (2) evidence supported that the handgun was found in Taylor's car; (3) evidence supported that Taylor's DNA was found on the trigger; (4) evidence supported that Taylor refused to give his DNA without a search warrant; and (5) evidence supported that Taylor denied knowledge of the firearms. With the State's argument in mind, we turn to the persuasiveness of the State's position.

18

For starters, the State has asserted that there was evidence Taylor knew the firearm was stolen without explaining what evidence supports this conclusion. The State has not even cited a place in the record where such evidence was presented. The only direct statements made indicating that Taylor might have known the handgun was stolen came from the prosecutor during closing arguments: the prosecutor told the jury that Deputy Pechnik had testified that Taylor had asked him if the handguns were stolen. Yet, an examination of Deputy Pechnik's trial testimony establishes that he never testified that Taylor had asked him if the handgun was stolen.

Next, the evidence certainly supported that the handgun was found in the car Taylor was driving. What the State neglects to point out was that (1) Taylor's car was a rental car that had been rented under Taylor's girlfriend's name and (2) Taylor had told Deputy Pechnik that three other people had been in the car. Thus, the evidence did not support that Taylor was the only person who had been in the rental car.

In making the arguments about DNA, the State further neglects to note contradictory evidence. First, while Taylor's DNA was found on the trigger of the handgun, the forensic scientist stated that a person's DNA can be placed on an object that person did not touch under a process called transfer DNA. Deputy Pechnik's bodycam video showing the search of the car establishes that Deputy Pechnik touched the car's visor and steering wheel before grabbing the handgun and unloading it. Undoubtedly, as a person who drove the car, Taylor had at the very least touched the car's steering wheel. Additionally, the State makes no mention of the fact that DNA from four males were found on the handgun. Concerning Taylor's refusal to provide Deputy Pechnik with his DNA when initially asked, Deputy Pechnik testified that Taylor had told him he did not want to give him a DNA sample because he had already given a sample when booked into jail. Deputy Pechnik also testified that he did not make a "big deal" about getting the DNA sample when he asked.

19

Regarding Taylor's denial of knowledge the handgun was in the car, the State has assumed that denying knowledge of the handgun is an indicator of Taylor's guilt. Clearly, if Taylor honestly had no knowledge that the handgun was in the car, then his denial cannot be interpreted as a sign of guilt. This is why appellate courts have emphasized whether a defendant's explanation is satisfactory under the circumstances of the defendant's case. See, *e.g.*, *State v. Atkinson*, 215 Kan. 139, Syl. ¶ 3, 523 P.2d 737 (1974). Under the circumstances of Taylor's case, Taylor's denial was not inconsistent with the other evidence of his case. It is certainly possible that a person driving a rental car in which other people had ridden in might not be aware of all of the contents inside the car. Moreover, nothing presented at trial suggested that Taylor ever alleged anything other than he did not know the handguns were in the car.

Accordingly, outside of the fact that Taylor had control over the stolen handgun because it was in his car, the evidence did not support that Taylor knew the handgun was stolen. Yet, even the inference that Taylor committed the theft because the stolen handgun was in his car becomes questionable when one considers the other evidence in the record, like the fact the handgun had been stolen from Brown many months before it was found in Taylor's possession.

Moreover, if there was ever a question whether the prosecutor's misstatements of law could have been deemed harmless by this court, that question certainly vanished when one considers that the jury asked: "What is the definition of 'theft' as it relates to the firearm and as related to the charge in Instruction No. 9?" In short, the prosecutor's misstatements of law were clearly on the minds of the jurors when they were deciding Taylor's guilt, meaning the prosecutor's error almost certainly played a role in the jury's guilty verdict. Additionally, in making its arguments, the State fails to consider the prosecutor's statements conveyed to the jury that the State was the final arbiter on the legislature's intent, giving authority to the prosecutor's statement to which he was not entitled. The prosecutor's statements implying that he was the final arbiter on the

legislature's intent, in and of itself, was a serious error that the State has completely failed to take into account in its harmless error analysis.

Except for strict liability crimes, to be convicted of a crime, people must have the requisite culpable mental state outlined by statute. All thefts require that the defendant intended to permanently deprive the owner of the possession, use, or benefit of property; thus, all thefts require that the defendant know that the property he or she has been charged with stealing was in fact stolen. This is an essential element of the theft offense, and proof of its existence ensures that innocent people are not convicted of a crime. The prosecutor's statement to the jury that the jury could convict people of committing theft of a firearm even if those people were unaware that the firearms they possessed were stolen was a serious misstatement of law. Moreover, because evidence that Taylor knew the firearm was stolen was lacking, the prosecutor's misstatement bolstered the State's case where it was the weakest. The jury's question requesting "the definition of 'theft' as it relates to the firearm" as well as the prosecutor's decision to act as an authority on the legislature's intent merely solidifies the prejudicial effect of the prosecutor's statements. As a result, we reverse his theft conviction and vacate his sentence.

*Did the Trial Court Err by Denying Taylor's Motion for Judgment of Acquittal?*

Next, Taylor argues that the trial court erred when it denied his motion for judgment of acquittal at the close of the State's case because the State had failed to provide sufficient evidence that he had committed the theft. Taylor's argument turns on his belief that the State failed to establish that he had intended to permanently deprive Brown of the handgun. Although we are reversing Taylor's theft conviction, we will address Taylor's insufficient evidence claim because it involves an issue of double jeopardy for a defendant cannot be retried for the same crime without violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. See *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007).

21

*Standard of Review*

"A motion for judgment of acquittal is substantially the same as a motion attacking the sufficiency of the evidence." *State v. Torrance*, 22 Kan. App. 2d 721, 727, 922 P.2d 1109 (1996). Thus, the standard for reviewing challenges concerning the denial of a motion for judgment of acquittal is substantively identical to the standard for reviewing challenges concerning the insufficiency of the evidence. See *Torrance*, 22 Kan. App. 2d at 727. Appellate courts must consider whether the evidence in the light most favorable to the State supports that a rational factfinder could find proof beyond a reasonable doubt as to each element of the offense. *State v. Ta*, 296 Kan. 230, 236, 290 P.3d 652 (2012). While engaging in this analysis, appellate courts must refrain from reweighing the evidence, assessing the credibility of witnesses, or resolving conflicting evidence. *Ta*, 296 Kan. at 237. Furthermore, appellate courts may uphold a verdict based solely on circumstantial evidence, so long as that circumstantial evidence provides a basis for the factfinder to make a reasonable inference on the elements at issue. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

*Additional Facts*

Taylor's attorney initially made his motion for judgment of acquittal based on the argument that there was jurisdictional defect in the State's case. The prosecutor responded by not only providing argument why he believed this argument was wrong but also by stating that the legislature had decided that theft of a firearm was a special crime. The trial court took the motion under advisement. At the start of the second day of trial, the trial judge told the prosecutor that he wanted to better understand the law regarding "theft of the firearm, which [he thought the prosecutor] acknowledge[d] . . . ha[d]n't been established for part of this case, versus being in possession of the weapon." The trial judge quickly clarified that he believed there was sufficient evidence that Brown's handgun was in Taylor's car.

When the prosecutor provided his understanding concerning the theft law when a "possession of a weapon" is involved, the prosecutor asserted that sufficient evidence supported the State's case because Taylor possessed the handgun and Taylor denied knowing that the handgun was in the car. Taylor's attorney then responded that the State had provided no evidence that "Taylor was involved in the theft." At which point, the prosecutor told the trial court that the "sentencing enhancement" provision in the theft statute concerning firearms establishes that the legislature was "encourag[ing] people to go through the proper channels to obtain firearms, registration of the firearms, getting them from reputable dealers." Then, the prosecutor stated:  "If you come into possession of a stolen firearm, it doesn't require that you have the knowledge that that firearm is stolen. It is different from stolen property where we have to prove you know it is stolen." Immediately, after making this statement, the trial court denied Taylor's motion, stating: "All right. Motion as to Count 1 is denied. The case will proceed."

*Insufficient Evidence Supported that Taylor Intended to Permanently Deprive the Owner of the Handgun*

From the outset, we note that it seems that the trial court was close to granting Taylor's motion for judgment of acquittal concerning the theft charge until the prosecutor provided his errant analysis of theft of a firearm law. The trial court explicitly stated on the record that the State had not proven "theft of a firearm," the crime for which Taylor was charged. Moreover, the trial court's clarification that there was sufficient evidence to support that Brown's handgun was in Taylor's car only speaks to the prosecutor's errant analysis of the "possession of a weapon" law, which the trial judge asked the prosecutor to better understand. Also of significance, in recounting the State's evidence, the prosecutor told the trial court that Deputy Pechnik had testified that Taylor had asked him if the handgun was stolen; once again, no such testimony was ever made. As a result, we are presented with the following question: Did the trial court deny Taylor's motion for

23

judgment of acquittal because it believed the State had no burden to prove Taylor knew he was in possession of a stolen handgun?

Despite this concerning question, this court's standard for reviewing the denial of a motion for judgment of acquittal is whether there was sufficient evidence to support each element of the offense beyond a reasonable doubt when viewed in the light most favorable to the State. *Ta*, 296 Kan. at 236. Additionally, if the trial court ultimately reached the correct result, appellate courts will uphold a trial court's decision even if that decision was based on erroneous grounds. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015). Thus, while the trial court may have denied Taylor's motion based on incorrect grounds, if the State had in fact presented sufficient evidence, we may still affirm the denial of Taylor's motion for judgment of acquittal.

Once again, Taylor's sole argument regarding insufficiency of the evidence is that the State failed to establish that he had the requisite culpable mental state to commit the theft. The State responds that the following circumstantial evidence supports Taylor's conviction:  (1) that the handgun was found in Taylor's car; (2) that Taylor's DNA was found on the trigger of the handgun; (3) that Taylor refused to give Deputy Pechnik his DNA when initially asked; and (4) that Taylor denied knowledge that the handgun was in his car.

In the light most favorable to the State, the preceding evidence supports that Taylor had touched the handgun; therefore, Taylor knew the handgun was in the car. In turn, in the light most favorable to the State, Taylor's denial of having knowledge of the handgun, when he had in fact touched the handgun, supports that Taylor had lied. Yet, can the inference that Taylor had lied constitute enough evidence to provide a rational factfinder proof beyond a reasonable doubt that Taylor knew the handgun was stolen and therefore intended to permanently deprive Brown of the handgun?

24

Although not addressed by either party in their briefs, our Supreme Court has determined that whether a theft can be supported by the mere possession of stolen property depends upon the existence of two factors: (1) How believable the defendant's explanation is for possessing the stolen property? (2) How recently the property was stolen? See *Atkinson*, 215 Kan. 139, Syl. ¶ 3. In *Atkinson*, our Supreme Court explained: "The possession of stolen property raises a presumption that the possessor committed a burglary or a larceny if the possession is recent thereto and is unexplained or the explanation thereof is unsatisfactory." 215 Kan. 139, Syl. ¶ 3. More recently, this court repeated this standard in *State v. McCammon*, 45 Kan. App. 2d 482, Syl. ¶ 8, 250 P.3d 838 (2011), when we held: "Possession by an accused of recently stolen property is sufficient to sustain a conviction of theft where a satisfactory explanation is not given, particularly where the nature of the items and their condition support an inference that they have been stolen."

Here, because we must assume under out standard of review that Taylor lied about having no knowledge of the handgun, Taylor's explanation of why there was a stolen handgun inside his car was unsatisfactory. Regarding how recently the handgun had been stolen, based on Brown's testimony, we note that the handgun was stolen from Brown's house in the spring or the fall of 2013. Taylor was found with the stolen handgun on December 26, 2014. Assuming that the handgun was stolen from Brown's house in the middle of spring or fall 2013, we point out that at least 14 to 20 months had elapsed before Taylor was found with handgun on December 26, 2014.

In the past, our Supreme Court has held that finding the stolen item in the defendant's car 7 days after the item was stolen and an unsatisfactory explanation was sufficient to support the defendant's guilt. *State v. Ulriksen*, 210 Kan. 795, 801, 504 P.2d 232 (1972). Our Supreme Court has held that finding the stolen item in a defendant's car 6 weeks after the item was stolen and an unsatisfactory explanation was sufficient to support the defendant's guilt. *Atkinson*, 215 Kan. at 143. This court has held that finding

25

the stolen item in the defendant's storage unit 4 to 6 months after the item was stolen and an unsatisfactory explanation was sufficient to support the defendant's guilt. *McCammon*, 45 Kan. App. 2d at 489-90. Yet, when reviewing the State's appeal from the trial court's decision to grant the defendant's motion for judgment of acquittal, our Supreme Court held that finding the stolen item in the defendant's car 14 months after the item was stolen was too remote in time to support the defendant's guilt. *State v. Bamberger*, 210 Kan. 508, 509, 502 P.2d 760 (1972). In *Bamberger*, Bamberger had told police that he bought the item from a friend, whose identity he would not disclose, because he did not "'want to rat on a friend.'" 210 Kan. at 508. While facially it seems this explanation was unsatisfactory, the *Bamberger* court did not comment on whether the explanation was believable, focusing instead on the fact that "fourteen months after the theft was too remote in point of time to give rise to a presumption of guilt." 210 Kan. at 509.

Turning our focus back to Taylor's case, we point out that even though Taylor gave an unsatisfactory explanation about why he was in possession of the stolen handgun, the evidence was unassailable that the handgun had not been recently stolen. Based on our Supreme Court's holding in *Bamberger*, it seems 14 months, which is the minimum amount of time the handgun had been stolen when found with Taylor, is too remote in time to be recent. See 210 Kan. at 509. Moreover, based on our Supreme Court's holding in *Atkinson*, it is clear that without other evidence supporting a defendant's guilt, both an unsatisfactory explanation *and* possession of recently stolen property is required to establish that the defendant knew the property was stolen. 215 Kan. at 143. Here, there is only an unsatisfactory explanation. Moreover, there was no evidence presented indicating that the property, the handgun in this case, had been stolen as emphasized in *McCammon*, 45 Kan. App. 2d 482, Syl. ¶ 8. For example, the condition of the handgun had not been altered, such as removal or alteration of its serial number to prevent authorities from tracing the ownership history of the handgun.

To conclude, when the only evidence supporting a defendant's theft conviction is the possession of stolen property, our Supreme Court has held that such convictions may be upheld based on possession alone if the defendant provides an unsatisfactory explanation about why he or she has the property and the property was recently stolen. *Atkinson*, 215 Kan. at 143. Here, despite Taylor's unsatisfactory explanation, the handgun at issue had been stolen from Brown's house some 14 to 20 months earlier, which is too remote in time to be recent under *Bamberger*. Therefore, even when considered in the light most favorable to the State, based on our Supreme Court precedent, there was insufficient evidence to support that Taylor knew the handgun was stolen and therefore he intended to permanently deprive Brown of the handgun. As a result, the trial court erred when it denied Taylor's motion for judgment of acquittal, and Taylor's theft conviction is reversed and his sentence is vacated without the possibility of retrial. See *Scott*, 285 Kan. at 372.

*Was Taylor Entitled to Notice of What Items Constituted Contraband Inside the Jail?*

Taylor's next four arguments hinge on whether he was entitled to notice of what items constituted contraband inside the jail and could therefore result in additional criminal charges. Specifically, these are Taylor's arguments: (1) that the trafficking in contraband statute was unconstitutional as applied to him because he had no notice; (2) that his conviction was supported by insufficient evidence because he had no notice; (3) that he was entitled to an instruction on notice; and (4) that the prosecutor's statement to the jury that no notice requirement existed was improper.

*Trafficking in Contraband Background*

K.S.A. 2016 Supp. 21-5914(a)(1), the section of the trafficking in contraband statute that Taylor was convicted of violating, states:

"(a) Trafficking in contraband in a correctional institution or care and treatment facility is, without the consent of the administrator of the correctional institution or care and treatment facility:

(1) Introducing or attempting to introduce any item into or upon the grounds of any correctional institution or care and treatment facility."

Under this statute, outside of the phrase "any item," the term "contraband" is not defined. Moreover, the term "any item" is not further defined. Thus, the legislature placed correctional institution administrators (hereafter called "administrators") in exclusive control of deciding what items are deemed contraband inside their correctional institution. "Correctional intuitions" include both prisons and jails. K.S.A. 2016 Supp. 21-5914(d)(1).

Subsection (b) of K.S.A. 2016 Supp. 21-5914 is the penalty provision of the statute. K.S.A. 2016 Supp. 21-5914(b)(2)(A) states that noncorrectional facility employees who have been convicted of introducing "firearms, ammunition, explosives, or a controlled substance which is defined in K.S.A. 2016 Supp. 21-5701, and amendments thereto" are guilty of committing a severity level 5 nonperson felony. Marijuana constitutes a controlled substance under K.S.A. 2016 Supp. 21-5701. See K.S.A. 2016 Supp. 65-4105(d)(16). Noncorrectional facility employees convicted of bringing in some other item deemed contraband by facility rules are also guilty of committing a severity level 5 nonperson felony. K.S.A. 2016 Supp. 21-5914(b)(2)(B)-(D).

In *State v. Watson*, 273 Kan. 426, 429, 44 P.3d 357 (2002), our Supreme Court addressed the constitutionality of the former trafficking in contraband statute under K.S.A. 2001 Supp. 21-3826. This statute is substantively identical to the current trafficking in contraband statute Taylor challenges. The *Watson* court explained that before 1992 amendments, the trafficking in contraband statute provided "a laundry list of items defined as contraband." 273 Kan. at 429. In 1997, though, the legislature removed this list and delegated the authority to determine what items constituted contraband under

the statute to the administrators. *Watson*, 273 Kan. at 429-30. This resulted in the legislature enacting broad language stating people could be convicted of trafficking in contraband by bringing "'any item without the consent of the administrator'" into a correctional institution. *Watson*, 273 Kan. at 429.

The underlying facts of Watson's case were undisputed. Watson had been convicted of introducing contraband, which consisted of cigarettes, into jail by bringing the cigarettes with her while visiting an inmate. Watson intended to give the cigarettes to this inmate. As a visitor of the jail, Watson was not given a list of items that constituted contraband inside the jail. Nevertheless, she would have seen a sign outside the jail that stated the only items visitors could give inmates were "money, socks, underwear, religious articles, [and] needed medication." *Watson*, 273 Kan. at 427-28.

Unlike Taylor in this appeal, Watson did not challenge the constitutionality of trafficking in contraband statute as applied to her specifically. *Watson*, 273 Kan. at 435. Instead, Watson challenged that the trafficking in contraband statute was facially unconstitutional because it was vague. 273 Kan. at 428. Thus, a person could be convicted of introducing or attempting to introduce an item into a correctional institution without knowing that the item was considered contraband inside the facility. *Watson*, 273 Kan. at 428, 435. Watson's argument focused on the fact that contraband was broadly defined in the statute as "any item." *Watson*, 273 Kan. at 428-29.

Ultimately, our Supreme Court rejected Watson's argument that the trafficking in contraband statute was facially unconstitutional because it was vague. *Watson*, 273 Kan. at 435. Yet, in doing so, our Supreme Court emphasized that based on the broad "any item" language in the trafficking in contraband statute, the trafficking contraband statute could be implemented onto individuals in a manner inconsistent with constitutional due process. See *Watson*, 273 Kan. at 434-35. This was because the term "any item" can be applied without limitation. By not explaining what "any item" was the statute is deficient.

29

Persons of common intelligence would be required to guess at the term's meaning. For example, the statute contains no guidelines either to assist persons who desire to know whether they possess something that is prohibited from being introduced in the correctional facility or from attempting to introduce in the correctional facility or to assist officials who are charged with enforcement of the "any item" statutory prohibition. In reaching this holding, our Supreme Court drew guidance from three decisions dealing with the kind of notice necessary to sustain the constitutional validity of a trafficking in contraband statute. *Watson*, 273 Kan. at 431-35.

First, our Supreme Court turned to the Ninth Circuit Court of Appeals case *United States v. Park*, 521 F.2d 1381 (9th Cir.1975). Park had been convicted of trafficking in contraband after bringing 30 valium tablets concealed in "a Vaseline coated balloon" into a prison while visiting an inmate. *Park*, 521 F.2d at 1382. Park argued that the federal trafficking in contraband statute was unconstitutionally vague because it delegated authority to determine what items constitute contraband to the warden. The Ninth Circuit Court of Appeals determined that the federal trafficking in contraband statute was constitutional as applied to Park because Park had been given notice many times before visiting the prison that bringing certain items deemed contraband could result in criminal prosecution. *Park*, 521 F.2d at 1384. Given the *Park* court's holding, our Supreme Court held:

> "[Park] illustrates the general principle that a statute is not necessarily vague or overbroad simply because the legislature delegates the authority to determine what items constitute contraband to an agent or an agency. Yet, the broad authority granted by this type of statute demands that procedural safeguards are in place, *i.e.*, adequate notice to prison visitors, in order to ensure that the statute is implemented in a constitutional manner." *Watson*, 273 Kan. at 432.

Second, our Supreme Court turned to *People v. Holmes*, 959 P.2d 406 (Colo. 1998). Holmes, an attorney, had been charged under the Colorado trafficking in

contraband statute for bringing cigarettes and a lighter into his meeting with a client in jail, but the trial court dismissed the charge because it determined that the contraband statute was unconstitutional. The Colorado trafficking in contraband statute delegated the authority to determine what constituted contraband to the detention facility administrator. The statute also required that the administrator provide notice to persons who enter the detention facility of what items the administrator deemed to be contraband. *Holmes*, 959 P.2d at 409. While defending against the State's appeal, Holmes argued that the jail failed to comply with the trafficking in contraband statute's notice requirement, in part, because the signs at the jail stating that contraband was prohibited did not also state that persons would face criminal prosecution for bringing contraband inside the jail.

The Colorado Supreme Court agreed with Holmes, holding that even though the plain language of the trafficking in contraband statute did not demand notice that bringing in contraband could result in criminal prosecution, for the statute to be constitutional, such notice was required. *Holmes*, 959 P.2d at 415-19. The Colorado Supreme Court further held that items that were not specifically defined as contraband in the trafficking statute but determined to be contraband by the administrator must be made known to persons entering the facility. *Holmes*, 959 P.2d at 418-19. Given these holdings, our Supreme Court held that *Holmes* stood for the proposition that nondeceptive notice that a person would be committing a crime by bringing an item deemed contraband into a correctional institution was required to comply with constitutional due process requirements. See *Watson*, 273 Kan. at 433.

Last, our Supreme Court turned to *People v. Carillo*, 323 Ill. App. 3d 367, 751 N.E.2d 1243 (2001). Carillo had been convicted under the Illinois trafficking in contraband statute for having beer in his locked car, which was parked in the prison parking lot. The Illinois trafficking in contraband statute listed what items constituted contraband, including cannabis, and items that were "intrinsically innocent in nature." *Carillo*, 323 Ill. App. 3d at 368, 373. The Appellate Court of Illinois, Fifth District,

ultimately reversed Carillo's trafficking in contraband conviction because it determined that for the Illinois trafficking in contraband statute to be held constitutional, the statute must be narrowly interpreted in the favor of the accused in a manner that only punishes those who intended to violate the statute. *Carillo*, 323 Ill. App. 3d at 373-76. The *Carillo* court determined that an ordinary person would not believe he or she was breaking the law by keeping items that the statute deemed contraband inside a locked car in the prison's parking lot. 323 Ill. App. 3d at 375-76. As with the *Holmes* case, our Supreme Court held that *Carillo* stood for the proposition that nondeceptive notice that a person would be committing a crime by bringing an item deemed contraband into a correctional institution was required to comply with constitutional due process requirements. *Watson*, 273 Kan. at 434-35.

With the *Park*, *Holmes*, and *Carillo* decisions as guidance, our Supreme Court held:

"It is constitutionally permissible for the legislature to vest the administrators of correctional institutions with the authority to determine what items constitute contraband; however, adequate safeguards must be in place to ensure that the statute is not implemented in an unconstitutional manner.
"Administrators of correctional facilities must provide persons of common knowledge adequate warning of what conduct is prohibited for two reasons: to provide fair notice and to safeguard against arbitrary and discriminatory enforcement." *Watson*, 273 Kan. at 435.

Since *Watson*, there have been a handful of cases before this court where defendants have challenged whether they have received adequate notice that the item they brought into the correctional institution constituted contraband that could result in trafficking in contraband charges. See, e.g., *State v. Garcia*, No. 112,397, 2015 WL 9455582 (Kan. App. 2015) (unpublished opinion); *State v. Thompson*, No. 111,932, 2015 WL 9286794 (Kan. App. 2015) (unpublished opinion); *State v. Conger*, No. 92,381, 2005

WL 1561369 (Kan. App. 2005) (unpublished opinion). Of importance in this case is this court's decision in *Conger*.

In *Conger*, this court considered the State's appeal from the trial court's dismissal of Conger's trafficking in contraband charge for introducing contraband into the jail. Conger had been arrested and brought to jail. Before being brought to jail, Conger was asked if she had any drugs on her person, but she was not asked whether she had any drugs on her person when being booked into jail. While changing into inmate clothes during booking, Conger handed over her schizophrenia medicine to a police officer; this medicine was the basis of Conger's trafficking in contraband charge. The trial court dismissed the case because (1) Conger had not been given notice that she was required to turn over contraband at booking, and (2) Conger had voluntarily turned over her medicine.

The *Conger* court upheld the trial court's dismissal. In upholding the dismissal, the *Conger* court found the following facts significant: (1) Conger saw signs in the jail that stated bringing contraband inside the jail could result in criminal prosecution, but the signs did not define contraband; (2) Conger's schizophrenia medicine was legal for her to possess; and (3) Conger was taken to jail involuntarily. 2005 WL 1561369, at *3. In making the finding about Conger's medicine, the *Conger* court relied on *Carillo*, noting that the *Carillo* court discussed punishing people for possessing "intrinsically innocent" items. 2005 WL 1561369, at *3. In making the finding about the fact Conger was taken to jail involuntarily, the *Conger* court also emphasized that the *Watson* court had held that persons (1) must be given warning of what conduct is prohibited and (2) must be given reasonable time to comply with facility regulations. 2005 WL 1561369, at *3.

33

*Taylor Argues that* Watson *Demands Notice*

Turning our focus back to Taylor's challenge that the State had to establish that he received notice of what items, including illegal drugs like marijuana, constituted contraband inside the jail, we note that Taylor's challenge requires this court to consider both the language within the trafficking statute and its corresponding caselaw. Statutory interpretation is a question of law over which this court exercises de novo review. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Additionally, interpretation of prior appellate caselaw is also a question of law over which this court exercises de novo review. *State v. Key*, 298 Kan. 315, 318, 312 P.3d 355 (2013).

The gist of Taylor's argument is that *Watson* demands that he was entitled to notice of what items specifically constituted prohibited contraband inside the jail that could result in prosecution for trafficking in contraband. Taylor emphasizes that "[t]here is a difference between knowing that possessing marijuana is illegal, prohibited by statute, and knowing it is an additional separate crime to introduce it into a facility." Taylor points out that it is an undisputed fact that the State did not present evidence that he received notice regarding the jail's contraband policies and, in fact, the State argued that notice was not required at all. Taylor also compares his case to *Conger* because, like in *Conger*, he was taken to jail involuntarily and not given notice and opportunity to hand over any items constituting contraband.

Indeed, a review of the evidence presented at trial supports that Taylor did not receive any notice at any time about what constituted contraband or that introducing contraband into the jail could result in a separate criminal prosecution. There was no evidence that Deputy Pechnik asked Taylor if he had illegal drugs on his person before entering the jail. There was no evidence that Deputy Pechnik or any other person provided Taylor with either oral or written warnings that marijuana constituted contraband or that the introduction of contraband constituted a crime. Moreover, although

34

Deputy Pechnik initially testified that a sign on the jail's secured booking door stated "No illegal weapons or drugs," when recalled by Taylor, Deputy Pechnik admitted that the sign did not say anything about drugs. Taylor was also arrested following a car accident, meaning that he was taken to jail involuntarily.

The State does not dispute these facts. Instead, as it did below, the State continues to argue that notice was not required under the trafficking in contraband statute because marijuana is an illegal drug. Nevertheless, on appeal, the State has greatly expanded its reasoning why it believes notice was not required. Instead of simply arguing that notice was not required because marijuana is an illegal drug, the State now argues that the penalty provision of the trafficking in contraband statute makes it clear that controlled substances like marijuana are per se contraband. Because the State is making this argument for the first time on appeal, nothing within Taylor's brief addresses the State's new argument. Also, neither party has addressed the trial court's notice ruling, which was that the *Conger* court held notice was required only for intrinsically innocent items.

*Controlled Substances Are Not Per Se Contraband Under the Statute*

The State's argument about controlled substances being per se contraband under the trafficking in contraband statute has not yet been addressed by a Kansas appellate court. Summarized, the State's argument is that the trafficking in contraband statute— K.S.A. 2016 Supp. 21-5914—is unambiguous in regards to whether notice is required in Taylor's case because the subsection (b)(2)(A) penalty provision states that non-employees who bring controlled substances into a correctional facility are guilty of committing a severity level 5 nonperson felony. Thus, the State contends that the penalty provision provided Taylor with notice that he was violating the trafficking in contraband statute. The State also relies on *State v. Durst*, 235 Kan. 62, 678 P.2d 1126 (1984), in arguing that all items that are illegal to possess constitute per se contraband.

35

Yet, the State's argument ignores that the legislature has no role in determining what items constitute contraband under the trafficking in contraband statute. Instead, the plain language of K.S.A. 2016 Supp. 21-5914(a) states that persons may be convicted of trafficking in contraband when they bring "*any item*" into a correctional institution "*without the consent of the administrator of the correctional institution*." (Emphasis added.) Thus, under the plain language of the statute, the administrators have the exclusive say as to which items constitute contraband in their facilities because the legislature delegated its power to define contraband to the administrators. See *Watson*, 273 Kan. at 435-36 (explaining how the legislature delegated its authority to determine what constituted contraband to the administrators).

Clearly, the K.S.A. 2016 Supp. 21-5914(b)(2)(A) penalty provision shows that the legislature assumed administrators would determine that controlled substances like marijuana would constitute contraband inside their correctional institutions. Indeed, even if this penalty provision did not exist, it is reasonable to conclude that the legislature assumed the administrators would determine that controlled substances constituted items of contraband. Further, it goes without saying that it is highly improbable that any administrators would determine that controlled substances like marijuana were noncontraband items. Nevertheless, the important point is not the high improbability of a substance like marijuana being deemed noncontraband by administrators. Instead, the important point is that under the statute, administrators have the exclusive power to decide what items constitute contraband in their correctional institutions.

The delegation of power to the administrators has two important consequences. First, because the legislature has delegated its authority to the administrators to determine what items constitute contraband, the legislature has no control over what the administrators ultimately determine constitutes contraband. This means that the K.S.A. 2016 Supp. 21-5914(b)(2)(A) penalty provision outlining the penalty for trafficking a controlled substance only comes into play if the administrators define marijuana as

36

contraband in their own regulations. Thus, the fact the legislature has created a penalty for persons that have trafficked a controlled substance inside a correctional institution does not mean that marijuana as a controlled substance is per se contraband.

The administrators' exclusive power to decide what items constitute contraband leads to the second important consequence of the delegation of power. Because the legislature delegated complete authority to define the items that constitute contraband to the administrators, the legislature did not provide a list of items that constituted contraband in the trafficking in contraband statute. Instead, the legislature simply stated that "*any item*" the administrators determined to be contraband would become contraband. This brings us back to our Supreme Court's holding in *Watson*. The *Watson* court was able to hold that the trafficking in contraband statute was not unconstitutional *because it made a bright line rule that notice of what items the administrators deemed contraband must be provided to people entering correctional institutions so as to provide adequate warning to people that they will be engaging in criminal conduct by bringing any of those items into the correctional institution*. 273 Kan. at 434-35. This individualized notice was required because the plain language of the trafficking in contraband statute with its "any items" language was deficient, providing no notice of what items constituted contraband. Also, the *Watson* court stressed that if the evidence established that a defendant never received this individualized notice, the trafficking in contraband statute as applied to that defendant was not within the confines of due process. See *Watson*, 273 Kan. at 434-35.

Thus, the existence of the penalty provision the State relies on does not nullify the problems outlined in *Watson* that resulted in the *Watson* court holding that individualized notice of what constituted contraband was required for the trafficking in contraband statute to be applied to persons in a constitutional manner. Furthermore, had the penalty provision nullified such problems, one would assume that the *Watson* court would have made its notice requirement holding with an exception that notice was required for all

items unless listed under the K.S.A. 21-3826(c)(1), now K.S.A. 2016 Supp. 21-5914(b)(2)(A), penalty provision.

*The Trial Court's Interpretation of* Conger *was Incorrect*

As noted earlier, neither party has addressed the trial court's ruling that Taylor was not entitled to notice because it believed the *Conger* court held that notice was required for only intrinsically innocent items. Regardless, given that this was the trial court's actual ruling regarding why it determined Taylor was not entitled to notice, we will address this ruling.

To review, the *Conger* case involved Conger bringing her schizophrenia medicine inside the jail following her arrest. In holding that Conger lacked the culpable mental state to commit the trafficking in contraband violation, the *Conger* court noted that "it was certainly legal for [Conger] to possess the pill outside the correctional facility." 2005 WL 1561369, at *3. The *Conger* court noted that the *Watson* court cited *Carillo* approvingly, and the *Carillo* court had held that persons must be made aware that "intrinsically innocent items" constitute contraband inside jail so ordinary people do not unwittingly violate the Illinois trafficking in contraband statute. 2005 WL 1561369, at *3.

In making its ruling against Taylor, the trial court attached great legal significance to the phrase "intrinsically innocent," which the *Conger* court embraced from *Carillo*. The trial court, however, failed to take a few important things into account. First, although the *Conger* court noted that Conger's schizophrenia pills were legal for her to possess and noted the unfairness of prosecuting people for possessing items that are perfectly legal for people to possess outside the context of jail, the *Conger* court never went so far as to hold notice was only required for items that are legal to possess outside the context of a jail. Thus, the *Conger* court never held that people are entitled to notice only when intrinsically innocent items constitute contraband as the trial court ruled.

38

Second, although the *Carillo* court certainly focused on the effect of punishing people for bringing "intrinsically innocent" items onto prison property, the *Carillo* court was analyzing a very different trafficking in contraband statute. The Illinois trafficking in contraband statute actually defined what items would constitute contraband on prison property. 323 Ill. App. 3d at 368. A review of the Illinois trafficking in contraband statute in effect when *Carillo* was decided shows that "cannabis" as well as many other illegal drugs were clearly listed as contraband. See Ill. Comp. Stat. ch 5/31A-1.1(a)-(c) (West 1996). Moreover, the specific issue the *Carillo* court addressed was whether people could reasonably expect to be punished for trafficking in contraband by leaving legal items deemed contraband under the statute in their locked cars parked in the prison parking lot. 323 Ill. App. 3d at 369. As a result, the *Carillo* court was not addressing the same statutory issue that the *Watson* court was addressing. Also, since *Carillo*, the same Appellate Court of Illinois has decided that people could not be convicted of trafficking in contraband under the Illinois statute by leaving marijuana in a locked parked car in a prison parking lot. See *People v. Chrisman*, 334 Ill. App. 3d 1098, 1106, 779 N.E.2d 922 (2002).

Because of the differences between the Kansas and Illinois trafficking in contraband statutes, Kansas courts cannot simply adopt the "intrinsically innocent" language from *Carillo* and expect that it would apply to our trafficking in contraband statute.

*Taylor was Entitled to Notice*

Thus, to summarize then, the actual language of the Kansas trafficking in contraband statute, which does not define what constitutes contraband outside of stating that contraband is "any item" brought into a correctional facility "without the consent of the administrator," controls the analysis for notice requirements. In *Watson*, our Supreme

Court explained that while it was constitutionally permissible for the legislature to vest administrators "with the authority of determining what items constituted contraband," the "any item" language of the trafficking in contraband statute did not provide notice to ordinary people what conduct would constitute a crime. 273 Kan. at 435-36. As a result, the *Watson* court held that for the trafficking in contraband statute to be applied in a constitutionally permissible manner, administrators must provide people entering a correctional institution notice of what conduct they have deemed prohibited under the trafficking in contraband statute. 273 Kan. at 434-35. Without making any exceptions regarding the nature of the items deemed contraband, our Supreme Court held that people are entitled to adequate notice of what items constitute contraband. This would give people adequate notice they could face criminal charges by bringing those items into the correctional institution. *Watson*, 273 Kan. at 435. The individualized notice rectifies the fact notice is otherwise lacking in the trafficking in contraband statute.

Thus, under the *Watson* court's construction, the trafficking in contraband statute could lawfully prohibit the introduction or attempted introduction of contraband from coming within a correctional facility only if the correctional facility's administrator has given notice of what items are forbidden. As a result, Taylor was entitled to notice. Here, however, the facility's administrator failed to do so.

Because Taylor was entitled to notice what items constituted contraband inside the jail for the reasons outlined in *Watson*, this court must now consider each of Taylor's individual arguments relating to notice and his trafficking in contraband conviction. To review, each of Taylor's arguments that turn on whether notice was required are as follows: (1) the trafficking in contraband statute is unconstitutional as applied to him; (2) the evidence is insufficient to support his conviction given the lack of notice; (3) the trial court erred by failing to instruct the jury on the notice requirement; and (4) the prosecutor erred by telling the jury there was no notice requirement. Taylor contends that each of these alleged errors require reversal of his conviction. Indeed, a finding that the

trafficking in contraband statute was applied to Taylor unconstitutionally or that insufficient evidence supported Taylor's conviction would require reversal of Taylor's conviction without the possibility of retrial. Moreover, because a finding that the trafficking in contraband statute was applied to Taylor in an unconstitutional manner also necessarily speaks to the sufficiency of the evidence supporting Taylor's conviction, we have decided to address both issues together.

Appellate courts exercise de novo review when considering whether a defendant's due process rights were violated. *State v. Smith-Parker*, 301 Kan. 132, 165, 340 P.3d 485 (2014). When considering sufficiency of the evidence challenges, appellate courts decide whether all the evidence when viewed in the light most favorable to the State supports the defendant's conviction and if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

Taylor contends that the trafficking in contraband statute is unconstitutional as applied to him because he was "not provide[d] the procedural safeguard of 'adequate warning' that conduct was 'prohibited'" as explained by our Supreme Court in *Watson*. The State responds that this court should not reach this argument because Taylor did not raise this argument below and fails to address the fact he is raising this argument for the first time on appeal in violation of Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). The State's argument is unpersuasive because Taylor did raise this argument in his motion for judgment notwithstanding verdict. Additionally, even if Taylor had not raised this argument below, this court would be in a position to address Taylor's argument for the first time on appeal because Taylor's argument concerns his fundamental due process rights. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Turning our attention back to Taylor's argument, we point out that Taylor's argument is the argument that was not raised by Watson before our Supreme Court.

Watson raised a challenge to the trafficking contraband statute as a whole, arguing that it was facially unconstitutional. Our Supreme Court rejected Watson's argument that the trafficking in contraband statute was facially constitutional, but in doing so, it discussed what would constitute the implementation of the statute in an unconstitutional manner. *Watson*, 273 Kan. at 435. Taylor's challenge specifically speaks to whether the statute was applied to him in an unconstitutional manner.

Clearly, this inquiry is fact specific. As argued by Taylor in contesting the sufficiency of the evidence, "[i]n this case, it is not a question of whether the notice was adequate: the State did not present [evidence of] any notice. The prosecutor told the jury that notice was not required, arguing that it was Mr. Taylor's burden to obtain prior consent." Moreover, the State has not countered this contention in arguing against Taylor's challenge to the constitutionality of the statute as applied to him or in arguing against Taylor's challenge to the sufficiency of the evidence. Instead, the State repeats its arguments that marijuana is illegal per se and that Taylor should have known better. The State also stresses the principle that people are presumed to know the law.

While it is certainly a principle that people are presumed to know the law, the State's argument ignores that this presumption cannot exist if the statute at issue does not convey to people what the law is. Indeed, the *Watson* court cited cases noting the principle that people are presumed to know the law. 273 Kan. at 434. And still, the *Watson* court held that administrators had to take the extra step of providing some form of individualized notice of what conduct it deemed prohibited under the trafficking in contraband statute because the statute alone provided no such notice. 273 Kan. at 435. Failure to comply with the notice rule results in the trafficking in contraband statute being implemented on an individual in an unconstitutional manner that does not comply with due process of law. As a result, the trafficking in contraband statute was applied to Taylor in an unconstitutional manner. The fact Taylor received no notice also necessarily means that Taylor's trafficking in contraband statute was supported by insufficient evidence.

For these reasons, we reverse Taylor's conviction and vacate Taylor's sentence for trafficking in contraband. Furthermore, because we have reversed based on the preceding, it should go without saying that the trial court's failure to give an instruction on the notice requirement and the prosecutor's statement to the jury that no notice requirement existed were error.

Likewise, since we have reversed Taylor's trafficking in contraband conviction and vacated Taylor's sentence because the statute was applied to him unconstitutionally and insufficient evidence supported his conviction, we need not address Taylor's final argument that the trial court committed reversible error by broadening the culpable mental states required to convict Taylor of trafficking contraband in the jury instructions. We would note, however, that the trial court clearly erred by instructing the jury that that it could convict him if it believed he "intentionally, knowingly, or recklessly" committed trafficking in contraband given that the State had charged him with only "intentionally" committing the crime. Moreover, our review of the parties' arguments and facts of the case establishes that Taylor would be entitled to reversal of his trafficking in contraband conviction based on the trial court's instruction error because this error seriously prejudiced Taylor's defense by lowering the culpable mental state required for conviction.

Convictions of theft and trafficking in contraband reversed.